**Ernest PENA and Yvonne Pena, Appellants,**

v.

**STATE FARM LLOYDS, Appellee.**

**No. 13–97–150–CV.**

Court of Appeals of Texas, Corpus Christi.

Nov. 12, 1998.

Rehearing Overruled Dec. 17, 1998.

Savannah L. Robinson, Friendswood, Stacy L. Keaton, Austin, for Appellant.

Paul Dodson, White, Huseman & Pletcher, Corous Christi, for Appellee.

Before Justices DORSEY, HINOJOSA, and RODRIGUEZ.

## OPINION

HINOJOSA, Justice.

This is an appeal from the grant of a summary judgment in favor of appellee, State Farm Lloyds, an insurance company. Appellants, Ernest Peña and Yvonne Peña, raise five points of error contending the trial court erred: (1) in granting State Farm's motion for summary judgment, (2) in finding that their tort and policy benefit claims were barred by limitations, (3) in deciding that State Farm had a reasonable basis for denying their claims, (4) in determining that State Farm did not violate any provisions of the insurance code or engage in deceptive trade practices, and (5) in ordering that they take nothing on their extra-contractual claims. We reverse and remand.

### Background

The Peñas purchased their home in Corpus Christi, Texas in July 1989. The single-story house was built in 1939 with a pier-and-beam foundation system, and a basement. The home's hardwood floor was installed in 1939 without sub-flooring or a vapor barrier. In 1987, the then-owner, Ward Thomas, Jr., added a bathroom to the master bedroom at the rear of the house. The bathroom sits on a concrete slab foundation. Thomas never experienced any problems with the foundation or plumbing. After purchasing the home, the Peñas obtained homeowner's insurance coverage from State Farm.

In October 1991, the Peñas came home from a vacation and discovered the hardwood floor throughout their home had buckled or cupped severely. Upon inspection, they discovered a leaking water heater pipe had allowed steam to escape into the basement directly beneath the hardwood floor. They then filed a claim for the damage. State Farm acknowledged the claim on October 21, 1991, and assigned it claim number 53–N305–844.

In November 1991, Jim Wiethorn of Haag Engineering studied the damage to the floor and confirmed to State Farm that the water heater leak had been the cause. He noted that fungal growth was present on the underside of the wooden planks. He told State Farm that reasonable repairs for the hardwood floor consisted of sanding and refinishing. State Farm issued a check on December 20, 1991, for the recommended repairs.

The Peñas were unable to find any contractor willing to perform such repairs. All of the contractors that looked at the floor determined it was damaged to such an extent, it would continue to buckle after every period of rainy weather. The contractors recommended the Peñas install sub-flooring and a vapor barrier, in addition to replacing the floor.

On August 10, 1993, Mr. Peña contacted State Farm, explained that the disbursement of December 1991 was insufficient to cover

the needed repairs to the floor, and requested additional funds to replace the floorboards under the replacement coverage provided for in the policy. The claim was finally denied on May 11, 1994.

On October 21, 1991, the Peñas filed a claim for damages caused by movement of the slab foundation under the master bathroom. State Farm assigned it claim number 53–N305–923. When Wiethorn inspected the hardwood floor in November 1991, Mr. Peña pointed out various cracks in the bathroom walls as well as roof and floor separations where the bathroom addition joined the original structure of the home. Wiethorn concluded that the water ·heater leak in the basement could not have caused the slab foundation and structural damage, but he performed only a cursory investigation to determine other causes. State Farm denied the slab foundation claim on January 16, 1992, on the basis that the water heater leak had not affected the foundation and the roof problems were the result of "improper roof detailing."

Over the next four years, the slab foundation problems were investigated by four groups of engineers and handled by seven different claims representatives. It was determined that the foundation had moved, and leaks in the bathroom plumbing were discovered. Plumbing tests were authorized in late 1993. Several leaks were discovered and reported to State Farm on December 20, 1993. State Farm sent the Peñas a draft to make plumbing repairs, and indicated the foundation claim was continuing.·

State Farm assigned the claim for the damaged, leaking roof claim number, 53–N313–378, and made a payment for the roof damage on December 8, 1993.

On October 18, 1993, the Peñas made additional damage claims for the plumbing leaks and slab foundation movement, and State Farm assigned them claim number 53–N313–382.

On January 11, 1994, State Farm hired Charlie Bellah, a professional engineer, to investigate the slab foundation and structural damages to the home caused by the plumbing leaks. Bellah's report in March 1994, supported by another report from Wiethorn, concluded the plumbing leaks had caused no damages. On March 31, 1994, State Farm finally denied the Peñas' slab foundation claims.

In November 1994, State Farm informed the Peñas that their homeowner's policy would not be renewed unless the roof was repaired within six months. When the policy was canceled six months later, the stated reason was that the Peñas had filed more than three claims in a three-year period.

On March 17, 1995, the Peñas sued State Farm, alleging breach of the duty of good faith and fair dealing, violations of the Texas Insurance Code and Deceptive Trade Practices—Consumer Protection Act (DTPA), and for additional policy benefits. State Farm moved for partial summary judgment, which was granted on July 11, 1996. The Peñas nonsuited the remainder of their claims in December 1996, and timely appealed the summary judgment.

### Jurisdiction

State Farm questions whether the Peñas can appeal the partial summary judgment as the remainder of their case was disposed of by non-suit. The order for non-suit contains a final order that the Peñas take nothing, in accord with the interlocutory partial summary judgment, and also contains Mother Hubbard language. This is sufficient to render the partial summary judgment final and appealable. See Newco Drilling Co. v. Weyand, 960 S.W.2d 654, 656 (Tex.1998); Hyundai Motor Co. v. Alvarado, 892 S.W.2d 853, 855 (Tex.1995); Mackie v. McKenzie, 890 S.W.2d 807, 807–08 (Tex.1994).

### Standard of Review

■ A motion for summary judgment must expressly state the grounds upon which it is made. McConnell v. Southside Indep. Sch. Dist., 858 S.W.2d 337, 339 (Tex.1993); TEX.R. CIV. P. 166a(c). Summary judgments may not be affirmed or reversed on grounds not expressly set forth in the motions presented to the trial court. City of Houston v. Clear Creek Basin Auth., 589 S.W.2d 671, 677 (Tex.1979); Carlisle v. Philip Morris, Inc., 805 S.W.2d 498, 518 (Tex.App.—Austin

1991, writ denied). A motion for summary judgment must stand or fall on the grounds expressly presented in the motion, and a court may not rely on briefs or summary judgment evidence in determining whether grounds are expressly presented. *McConnell*, 858 S.W.2d at 339. However, a non-movant does not need to respond to a motion for summary judgment to complain on appeal that the motion was insufficient as a matter of law to support summary judgment. *Clear Creek Basin Auth.*, 589 S.W.2d at 678.

The proper inquiry on appeal is whether the defendant, in seeking summary judgment, fulfilled his initial burden (1) to establish as a matter of law that there remained no genuine issue of material fact as to one or more essential elements of the plaintiff's cause of action or (2) to establish his affirmative defense to the plaintiff's cause of action as a matter of law. *Casso v. Brand*, 776 S.W.2d 551, 556 (Tex.1989); *Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548–49 (Tex.1985); *Swilley v. Hughes*, 488 S.W.2d 64, 67 (Tex.1972). In deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the non-movant must be taken as true. *Nixon*, 690 S.W.2d at 549. Every reasonable inference must be indulged in favor of the non-movant and any doubts resolved in his favor. *Id.* Once the movant establishes an affirmative defense which would bar the suit as a matter of law, the non-movant must produce summary judgment proof raising a fact issue in avoidance of the affirmative defense. *Gonzalez v. City of Harlingen*, 814 S.W.2d 109, 112 (Tex. App.—Corpus Christi 1991, writ denied).

■ If a summary judgment order specifies the grounds on which the trial court based the summary judgment, we limit our review to those grounds. *State Farm Fire & Cas. Co. v. S.S.*, 858 S.W.2d 374, 380 (Tex. 1993); *Delaney v. University of Houston*, 835 S.W.2d 56, 58 (Tex.1992); *Cox v. Upjohn Co.*, 913 S.W.2d 225, 228 (Tex.App.—Dallas 1995, no writ). The summary judgment will be affirmed on appeal if the specified grounds are meritorious. *S.S.*, 858 S.W.2d at 380; *Rios v. Texas Commerce Bancshares, Inc.*, 930 S.W.2d 809, 814 (Tex.App.—Corpus

Christi 1996, writ denied). Even if the motion contained other independent grounds on which summary judgment was sought, the grounds specified in the order are the only ones on which summary judgment may be affirmed. *Carlisle*, 805 S.W.2d at 518. In reviewing the summary judgment evidence, we are only allowed to review the summary judgment evidence on file at the time of the hearing. *Allen v. Wachtendorf*, 962 S.W.2d 279, 281 (Tex.App.—Corpus Christi 1998, writ denied). Statements of facts and arguments made at the hearing are not considered on appeal from the granting of a summary judgment. TEX.R. CIV. P. 166a(c); *McConnell*, 858 S.W.2d at 341; *Allen*, 962 S.W.2d at 281.

*Limitations*

By their first point of error, the Peñas complain the trial erred in granting State Farm's motion for summary judgment. By their second point of error, the Peñas contend the trial court erred in finding that their claims for additional policy benefits, and for tort claims related to the denial of those benefits, were barred by limitations and policy provisions that suit be timely filed.

■ Limitations begin to run on an insurance policy when the loss is denied. *Jett v. Truck Ins. Exch.*, 952 S.W.2d 108, 111 (Tex. App.—Texarkana 1997, no writ); *Amarco Petroleum, Inc. v. Texas Pac. Indem. Co.*, 889 S.W.2d 695, 697 (Tex.App.—Houston [14th Dist.] 1994, writ denied). The Peñas' homeowner's policy provides that suit must be brought against State Farm within two years and one day after the cause of action accrues.

In its motion for summary judgment, State Farm contended that the Peñas' claim for damages for slab foundation movement and roof damage (claim number 53–N305–923) was denied on January 16, 1992. As to the floor damage claim filed in October 1991, State Farm asserted only that a payment was made on December 20, 1991. Because suit was filed in March 1995, more than two years and one day after the denial letter of January 1992, State Farm asserted that the Peñas' suit on these claims must be denied. State Farm further contended, without cita-

tion to statute, that a two-year statute of limitation applied to the Peñas' tort claims for bad faith.

■ Claim number 53–N305–844, for the slab foundation, was expressly denied on January 16, 1992. However, the Peñas made an additional claim for damages related to the slab foundation on October 18, 1993, and that claim was assigned number 53–N305–382. The summary judgment evidence submitted by State Farm establishes that both claims were for damages caused by slab foundation movement. State Farm conceded the claims were essentially the same as they arose from the exact same source, the slab foundation movement, and concerned a continuing problem.

■ Timely claims for additional payments may begin the statute of limitations running anew. *See Stevens v. State Farm Fire & Cas. Co.*, 929 S.W.2d 665, 671–72 (Tex.App.—Texarkana 1996, writ denied). The Peñas' second claim in October 1993, for damages related to the slab foundation movement was filed within two years of the January 1992 denial of their first claim. At that time, State Farm investigated the claim and made a payment on it. Requests for additional payments were finally denied in March 1994. The Peñas filed suit well within two years of March 1994 when State Farm denied coverage for most of the slab foundation claim.

Because the slab foundation problems were essentially on-going, and its subsequent reinvestigation of and partial payment for the same reported problems, it appears the denial of the October 1991 claim was effectively reconsidered and withdrawn by State Farm, thus resetting the starting date for limitations to March 31, 1994.

■ After receiving State Farm's payment for the floor in December 1991, the Peñas sought additional monies in August 1993. State Farm finally denied all claims related to the floor and the water leak damage in May or October 1994.[1] Because they filed suit against State Farm on March 17, 1995, the two-year statute of limitations clearly did not run as to the Peñas' complaints concerning the floor.

We conclude the Peñas' claims for additional policy benefits are not barred by either the statute of limitations or the policy provisions regarding the timely filing of suit.

■ A bad faith insurance claim accrues on the date the insurer denies coverage. *Murray v. San Jacinto Agency, Inc.*, 800 S.W.2d 826, 828 (Tex.1990); *Stevens*, 929 S.W.2d at 671. The same rule applies to insurance code and DTPA claims. *Celtic Life Ins. Co. v. Coats*, 885 S.W.2d 96, 100 (Tex.1994); *Stevens*, 929 S.W.2d at 671.

■ State Farm denied coverage on the Peñas' slab foundation claims twice, in January 1992, and again in March 1994. Because the two claims for foundation damage were the result of a continuing problem, and because we make all reasonable inferences in favor of the non-movant, we find that despite the assignment of separate claim numbers, the Peñas' complaint was unchanged and should be regarded as a single, continuous problem. For this reason, we conclude the final denial of coverage in March 1994 is controlling. As suit was filed in March 1995, neither the policy provisions nor the statute of limitations have barred the Peñas' claims for bad faith.

We hold the trial court erred in finding that the Peñas' claims for additional policy benefits, and for tort claims related to the denial of those policy benefits, were barred by limitations and policy provisions that suit be timely filed.

We sustain the Peñas' first and second points of error.

### Bad Faith

By their third point of error, the Peñas contend the trial court erred in deciding that State Farm had a reasonable basis for denying their claims. By their fourth point of error, the Peñas assert the trial court erred in determining that State Farm did not vio-

---

1. State Farm offered two letters referring to this claim, both of which appear to deny further coverage. As the dates on both are well within the two-year limit, we need not consider which is the final denial.

late any provisions of the insurance code or engage in deceptive trade practices.

Formerly, in order to state a cause of action for the breach of the duty of good faith and fair dealing, an insured had to allege there was no reasonable basis for the insurer's denial of a claim, there was a delay in payment by the insurer, or there was a failure on the part of the insurer to investigate. *Arnold v. National County Mut. Fire Ins. Co.,* 725 S.W.2d 165, 167 (Tex.1987). The Peñas based their cause of action for breach of good faith and fair dealing on allegations that State Farm had no reasonable basis for denying their claims. *See id.* In *Universe Life Ins. Co. v. Giles,* the supreme court articulated a new standard, declaring that an insurer acts in bad faith when denying or delaying payment of a claim if it should have been "reasonably clear" that the claim was covered. *Giles,* 950 S.W.2d 48, 54–56 (Tex. 1997)

■ Under the *Giles* standard, the proponent of a bad faith claim has the burden of proving that the insurer knew or should have known it was reasonably clear that the claim was covered. *See State Farm Lloyds v. Nicolau,* 951 S.W.2d 444, 448 (Tex.1997) (applying new standard on same day of pronouncement). As movant for summary judgment, the insurer may negate an essential element of the appellants' claim by showing that its liability was not reasonably clear, *i.e.,* that there was a reasonable basis for believing a claim was not covered. *Id.* at 446; *Lyons v. Millers Casualty* Ins. Co., 866 S.W.2d 597, 601 (Tex.1993); *Aranda v. Insurance Co. of N. Am.,* 748 S.W.2d 210, 213 (Tex.1988) (carriers retain right to deny invalid or questionable claims without being subject to bad faith liability for erroneous denial of a claim).

■ The question of whether an insurer's liability has become reasonably clear presents a fact issue for the jury. *Giles,* 950 S.W.2d at 56. Whether an insurer acted in bad faith because it denied or delayed payment of a claim after its liability became reasonably clear is also a question for the fact finder. *Id.* Only where there is no conflict in the evidence may a court decide whether there is bad faith as a question of law. *Id.*

■ We believe the summary judgment evidence raises material fact questions. State Farm assigned two claim numbers in October 1991, one for the flooring, the other for the slab foundation, yet investigated the claims simultaneously as related and resulting from a single cause. The record contains nothing about the original form of the claims submitted by the Peñas concerning the floor and the foundation problem, but State Farm's assignment of separate claim numbers, leads us to infer that the Peñas did not claim the problems were related. When the Peñas reurged the foundation claim, on the same basis as the initial claim, State Farm assigned yet another claim number, without explanation. At least seven different claims representatives were assigned to work with the Peñas. Only two, perhaps three, of the representatives appear to have meaningfully participated in evaluating and reporting on the status of the Peñas' claims.

It seems clear from the summary judgment evidence submitted by State Farm that the Peñas first complaint of slab foundation damage was not thoroughly investigated before the claim was rejected in 1992. State Farm directed Wiethorn, of Haag Engineering, to see if both claims were due to a common cause, the leaking water heater. In his report of December 11, 1991, prepared for State Farm Representative Carol Kilpatrick, Wiethorn noted the structural damage concerning the foundation, but concluded that only the floor had been affected by the water heater leak. He stated that the floor was buckled in only localized areas, and deduced that the buckled planks were ones that had been replaced at some point in the past. Wiethorn commented that some planks could be permanently warped and displaced as a result of the exposure to moisture, but nonetheless recommended only refinishing. He noted that a contractor consulted by the Peñas had suggested a "plumbing leak" had affected the slab foundation beneath the master bathroom, but did not say whether the contractor was consulted before or after October 21, 1991, and did not make it clear whether he or the unidentified contractor meant "plumbing leak" should be synony-

mous with the water heater leak. Without explanation of how the data was obtained or whether it was an assumption, Wiethorn wrote that the slab foundation sat on a "shallow footing" of something undefined, and was probably affected by weather patterns and the water demands of a nearby tree. He surmised that the damage may have predated the water heater leak. Based on this report, State Farm denied the slab foundation claim for the first time in January 1991.

When the Peñas pressed the claim again, in October 1993, a different claim number was assigned. Deborah Purser was the State Farm employee assigned to this claim. No investigatory work was carried out until December 20, 1993, when Herndon Company performed some tests on the plumbing beneath the slab foundation. Following the report that several leaks were present, a $5,029 check was issued to the Peñas by State Farm on January 15, 1994, to begin plumbing repairs. The Herndon report says nothing about whether the leaks could have affected the foundation and caused movement which damaged the house. The report states that a static test was performed showing a consistent loss of seven inches of water per minute, and noticed that the cast iron and PVC pipes were in bad condition. It also stated plainly that a hydrostatic test was attempted but not performed due to "several visible leaks in the system." It is unknown what purpose the test would have served or its precise value to subsequent investigators, but the fact that each subsequent investigator referred to the unperformed test as if it had been completed suggests its value would have been significant. A leak-locate/isolation test was performed which showed water loss under the slab in two locations plus a leak in the pier and beam system section underneath the house. A flow test showed no loss of water under normal conditions under the foundation.

Charlie Bellah, an independent engineer, was employed in 1994 by Pablo Reyes, a State Farm claims representative, to perform another investigation of the slab foundation damage. In his report, dated March 18, 1994, Bellah referred to the Herndon tests, erroneously stating that a hydrostatic test had been performed. He also stated that Herndon Company's isolation test found two leaks, under the master bath and under the hallway of the residence. Herndon's report does not support these statements. Herndon's diagrams show at least three leaks, all of them under or near the slab under the master bathroom. It appears that Bellah did not review the Herndon report with any due care. Bellah did not repeat the plumbing tests or perform any additional tests. In one section of his report, Bellah generalizes that if there is clay beneath a slab foundation, only a small wet area will form around the leak and damage is unlikely. Elsewhere, however, he describes the type of clay soil in the area as expansive, subject to a substantial range of swelling and shrinkage as it is moistened and dehydrated. In yet another part of the report, Bellah states, speaking generally, how a slab foundation should have either sand or loosely compacted soil around the pipes beneath it, and that there is typically four to eight inches of sand beneath a slab in total. He did not determine whether these generalizations actually applied to the Peñas' slab, leaving us to wonder what effects the plumbing leaks might have if the slab is not situated on sand or loosely compacted soil. Bellah also opined that a plumbing leak that affected the foundation would have lifted the foundation under the entire house in the area of the leak, despite the fact that, unlike the master bathroom which sits on a solid slab, the rest of the house is supported by a pier and beam foundation and is affected by a different stratum of soil. Bellah generalizes at length, but devotes very little discussion to the actual situation, never quite explaining why the known plumbing leaks could or could not cause or contribute to structural damage in this particular case. He concludes "there are no indications of heaving or doming around the leaky sewer pipes ... that is related to the plumbing leak." From this statement, it is inferable that heaving and doming was, in fact, observed. Given the lack of data concerning whether the slab rests on clay or sand, the report's seeming contradiction on the absorption and expansiveness of clay, the poor use of the plumbing report, and Bellah's glaringly inaccurate statement of the location

of the leaks, we cannot say with confidence that the investigator's report is reliable. Nevertheless, State Farm used the report as the basis of the claim's denial on March 31, 1994.

Despite the denial, State Farm informed the Peñas on May 10, 1994, that investigation of claim number 53–N305–923 was continuing. Yet another denial letter was sent the following day. In January 1995, another investigation was authorized by Juan Hernandez of State Farm, to review the damage caused to the Peñas' home by slab foundation movement, apparently not at the request of the Peñas nor for their benefit. The investigation was made on February 1, 1995, by Kenneth Struzyk of the Simpson Group. Struzyk reviewed the Herndon report of December 20, 1993, and Wiethorn's and Bellah's reports, and consulted a study of the near surface soils around the Peñas' home before carrying out a visual inspection. Like the other investigators, Struzyk did not determine what lay underneath the slab, and how it could be affected by leaks, and apparently relied heavily on the prior opinions, including Bellah's inaccurate references to Herndon's report. Struzyk concluded that the foundation problems were largely due to the presence of vegetation.

One more report was commissioned by State Farm in 1996, and delivered by Maverick Engineering on May 2, 1996. This report is not a part of the record, but is referred to by Kenneth Struzyk in the affidavit accompanying his report. Struzyk stated he had reviewed the report, but that it would not alter his opinion.

Each of the investigations leaves unanswered questions about the actual conditions of and under the slab, and how it may have been affected by the leaks. Wiethorn's report, in particular, appears to be partially based on the results of a test Herndon Plumbing did not perform, without carefully reading the report, without noticing the two different types of foundation the Peñas' residence has, and without any effort to determine what actually lay underneath the master bathroom's foundation slab, relying instead on generalizations. There are also unanswered questions concerning the care taken in performance of the investigations. It appears that despite the letters denying the Peñas' claims concerning the slab foundation movement and resultant damage, and without any further urging from the Peñas, State Farm did not consider the matter closed and continued to investigate in order to bolster its denials.

Regarding the hardwood floor, although State Farm protests that the Peñas wanted payment to cover the installation of sub-flooring and a vapor barrier in addition to replacement of the wooden planks of their floor, the record does not indicate that this is so. In their depositions, the Peñas spoke only of asking State Farm to honor its replacement coverage of the wooden floor, and did not mention wanting compensation for the additional components.

There is no evidence to show that the Peñas experienced any problems with the hardwood flooring prior to the water heater leak in October 1991, but abundant evidence demonstrating repeated buckling and cupping afterwards. Wiethorn noted that some permanent problems of warping and displacement possibly existed. The only solution State Farm would offer was to have the floor sanded and refinished in accordance with Wiethorn's recommendation. However, State Farm also acknowledges that the hardwood floor could be refinished up to three times to correct the problem. Given that the house is nearly sixty years old and the absence of evidence concerning how many times the floor may have been refinished in that time, it is not clear that mere sanding and refinishing would indeed restore the floor to its previous condition.

Some evidence indicates that replacement, rather than refinishing, may in fact be warranted. Haag Engineering's report of April 27, 1994 contained descriptions of the flooring which suggest considerable damage due to moisture is present. Wiethorn had previously noted the development of fungal growth following the water heater leak, and implied it could eventually promote rot. Struzyk also noted the presence of rot. Mrs. Peña testified that at least one flooring company called upon to sand and refinish the floor opined that the boards were too thin to

be corrected with finishing and had to be replaced. Mr. Peña also testified that, before the water heater leak, the floor had never buckled or cupped or presented any other problems. He stated that flooring companies had opined sanding and refinishing might restore the floor temporarily, but the buckling and cupping would continue to recur because the floorboards and nails holding them in place had loosened and would continue to move. It would seem that sanding and refinishing alone will not truly restore the Peñas' floor to its pre-claim condition, as this treatment does not appear to address the fungal problem or the movement.

Very little of the Peñas' correspondence with State Farm is in the record, but from State Farm's responses we find that the Peñas informed the various State Farm representatives of their continuing problems with the foundation and the flooring and of the opinions of professional flooring companies. The Peñas also testified that they had informed State Farm of the fact that the leaking pipes under the slab had gotten so bad that water actually ran out from under the slab while in normal use. State Farm never commissioned any further plumbing tests to investigate the situation. Additionally, State Farm presented no evidence to contradict the Peñas' claims as to what they told State Farm.

We are not convinced that the investigative reports provide a reasonable basis for denial of any of the Peñas' claims. Viewed as a whole, there is some evidence suggesting a breach of the duty of good faith and fair dealing may have occurred.

The trial court granted summary judgment on the Peñas' claims for violations of the insurance code and DTPA on the ground that State Farm had a reasonable basis for its denial of the Peñas' claims. In other words, in the absence of bad faith, no statutory violations occurred. As we have found fact questions remaining on the issue of bad faith, this ground will not support the trial court's summary judgment on those claims. We sustain the Peñas' third and fourth points of error.

### Extracontractual Damages

■ State Farm asserted in its motion for summary judgment that the Peñas had waived any extracontractual damages, although the Peñas' pleadings requested such damages. In their depositions, the Peñas were asked what they wanted or were trying to get beyond policy benefits and attorney's fees; both acknowledged they wanted the house restored to its former condition and did not mention damages for mental anguish, etc.

■ Waiver is the intentional relinquishment of a known right or intentional conduct inconsistent with claiming that right. *Herschbach v. City of Corpus Christi*, 883 S.W.2d 720, 736 (Tex.App.—Corpus Christi 1994, writ denied). It is a voluntary act and implies an election to dispense with something of value or to forego some advantage that might have been demanded or insisted upon. *Id.* Without an express renunciation of a known right, a waiver will not be presented or implied contrary to the intention of the party whose rights would be injuriously affected thereby, unless by his conduct the opposite party has been misled to his prejudice into an honest belief that the waiver was intended or assented to. *Id.*

It is not clear from the Peñas' depositions that they intended to waive their right to claim extra-contractual damages. It appears, rather, that they were merely expressing a desire to at least have their home restored. Elsewhere in their depositions, they spoke about the anxiety and aggravation they had experienced over the home's problems and unsatisfactory dealings with State Farm. State Farm offers no evidence that it was misled into thinking the Peñas had waived any part of their suit. The Peñas' fifth point of error is sustained.

### Negligence

In their petition, the Peñas also alleged a cause of action for negligence predicated on State Farm's failure to adequately train and inform its employees, agents, and servants in handling and adjusting claims. State Farm moved for summary judgment on the ground that negligence in claims handling has gener-

ally been rejected by the courts. In other words, as a matter of law, the Peñas had no cause of action. The trial court granted summary judgment against the Peñas on their negligence claim.

The Peñas responded to State Farm's argument in the trial court, but did not complain of the trial court's action under any point of error on appeal. The only reference we find in the Peñas' brief concerning the negligence claim is a footnote which states:

> Appellants have not asserted negligence as a ground for reversal, nor have they challenged the holding that State Farm has made certain payments. Appellants have properly preserved the right to argue any unstated grounds by submitting a general point of error on the court's granting of summary judgment as recommended in *Malooly Brothers, Inc. v. Napier*, 461 S.W.2d 119, 121 (Tex.1970).

We disagree with the inference that *Malooly* relieves a party of the duty to raise and argue grounds for reversal merely because a general point of error is stated. We read *Malooly* as allowing the non-moving party to argue broadly on appeal under a general point of error, but we do not see that it relieves an appellant of the burden to challenge the grounds for the summary judgment and present at least some argument for his case on appeal. *See Malooly*, 461 S.W.2d at 121. Furthermore, unlike *Malooly* which concerned a general grant of summary judgment, *id.* at 120, the ground for the trial court's grant of summary judgment on the negligence claim in this case was clear and readily addressable. We cannot excuse the Peñas' failure to attempt to do so, and must deem this matter waived. We affirm the trial court's summary judgment on the negligence claim.

### Payments Made by State Farm

The Peñas raise no challenge to the trial court's finding that State Farm made payments under the policy of $2,779.11 on December 20, 1991, $1,308.87 on December 8, 1993, and $5,029.00 on January 15, 1994. The summary judgment evidence submitted by State Farm is conclusive on this point. We affirm this portion of the trial court's summary judgment.

We reverse the remainder of the summary judgment and remand the case to the trial court for further proceedings.