Opinion issued February 27, 2003












     



In The
Court of Appeals
For The
First District of Texas




NO. 01-02-00801-CV




STEWART TITLE GUARANTY COMPANY, Appellant

V.

THOMAS HADNOT AND GAY HADNOT, Appellees




On Appeal from the 127th District Court
Harris County, Texas
Trial Court Cause No. 01-41568




O P I N I O N

          This is an appeal of a summary judgment rendered for plaintiffs/appellees,
Thomas and Gay Hadnot, against defendant/appellant, Stewart Title Guaranty
Company, in the Hadnot’s suit for breach of a title insurance contract. We reverse
and render.
Factual & Procedural Background
          In the summer of 1993, the Hadnots entered into a Mechanic’s and
Materialman’s Contract with Gibraltar Homes to construct a residence. When the
home was finished in the spring of 1994, the Hadnots paid Gibraltar, obtained a
mortgage loan, and bought a title insurance policy underwritten by Stewart Title. A
few months later, the Hadnots received letters and mechanic’s lien affidavits from,
among others, Wenco Distributors, M&M Lighting, Hall’s Carpet Haus, and Dan’s
Plumbing, Inc.—subcontractors who alleged they had not been paid by Gibraltar. In
October, the Hadnots submitted a proof of loss form to Stewart Title, who responded
with a denial of the claim. The next month, the subcontractors sued the Hadnots to
recover on their claims. The county court rendered judgment against the Hadnots in
November 1995. The Hadnots appealed to this court. While the appeal was pending,
they wrote another letter to Stewart Title seeking reconsideration of the denial of
coverage. Stewart Title maintained its position that the loss was excluded from
coverage. After this court affirmed the trial court’s judgment,


 counsel for the
Hadnots wrote a third letter requesting coverage, which was again denied. Finally,
in February 1998, the Hadnots completed another proof of loss form that set out the
exact amounts owed under the judgment, the interest that had accrued, and attorney’s
fees. Stewart Title again declined to pay the claim. 
          In August 2001, the Hadnots filed suit against Stewart Title for breach of
contract. Stewart Title sought summary judgment based on limitations and the
contract exclusions they contend govern the claim. The Hadnots sought summary
judgment on the breach of contract claim. After the trial court denied Stewart Title’s
motion and granted the Hadnots’ motion, this appeal ensued.
The Summary Judgments
          In issue one, Stewart Title contends that the trial court erred in denying its
motion for summary judgment because the Hadnots’ suit is time-barred by limitations. 
In issue two, it contends the trial court erred in granting the Hadnots’ motion for
summary judgment because the lien claims were for labor and material the Hadnots
agreed to pay for; thus the claims were excluded under the title policy. The Hadnots
argue that limitations did not begin to run until the underlying suit to settle the lien
claims reached its final point, and that the claims were not excluded. Evidently, the
trial court agreed with the Hadnots on both grounds, because it overruled Stewart
Title’s motion and granted the Hadnots’ motion.

          Standard of Review — Cross Motions for Summary Judgment
          When both sides move for summary judgment and the trial court grants one
motion but denies the other, we review all of the evidence, determine all questions
presented, and render the judgment the trial court should have rendered. 
Commissioners Court of Titus County v. Agan, 940 S.W.2d 77, 81 (Tex. 1997). The
issues presented to the trial court here were questions of law, not fact. Therefore, we
must determine whether the suit was barred by limitations and, if it was not, whether
the lien claims were excluded under the title policy.
          Statute of Limitations — Breach of Contract
          A suit for breach of contract must be brought within four years from the date
the cause of action arose. Tex. Civ. Prac. & Rem. Code Ann. § 16.051 (Vernon
1997). The purpose of limitations statutes is to establish a point of repose and to
terminate stale claims. Safeway Stores, Inc. v. Certainteed Corp., 710 S.W.2d 544,
546 (Tex. 1986). In regard to limitations, the chronology of relevant events is as
follows:
          10-06-94      The Hadnots submit a proof of loss form seeking coverage under
the title policy for various mechanic’s liens filed against the
property.
 
          10-21-94      Stewart Title denies the claim. 

          11-14-94      The subcontractors sue the Hadnots.
 
          11-11-95      The trial court renders a final judgment against the Hadnots. 
 
          2-12-96       The Hadnots submit a letter referencing the judgment and again
seeking indemnification.
 
          2-23-96       Stewart Title responds with a second denial.
 
          4-10-97       This Court issues its opinion and judgment affirming the
judgment.

          7-23-97       This Court denies rehearing and rehearing en banc.
 
          8-13-97       The Hadnots’ counsel submits a third request for indemnification
and asks Stewart Title to pay for his continued representation;
Stewart Title denies coverage a third time.
 
          8-22-97       The deadline to submit a petition for review to the Texas Supreme
Court expires.
 
          2-18-98       The Hadnots submit a second proof of loss form, which is
again denied by Stewart Title. 

          8-15-01       The Hadnots file suit against Stewart Title.

          Stewart Title relies on well-settled insurance case law to argue that the statute
of limitations on the Hadnots’ claim for breach of contract began to run on the date
coverage was first denied—October 21, 1994—and expired four years later, two and
one-half years before the Hadnots filed suit on August 15, 2001. See Murray v. San
Jacinto Agency, Inc., 800 S.W.2d 826, 828-29 (Tex. 1990) (first party claim accrues
and limitations begins to run on date wrongful act occurs, i.e., the date coverage is
denied); Martinka v. Commonwealth Land Title Ins. Co., 836 S.W.2d 773, 776 (Tex.
App.—Houston [1st Dist.] 1992, writ denied) (insured’s cause of action accrues when
insurer denies claim). 
          The Hadnots argue that limitations did not accrue until February 19, 1998—the
date Stewart Title rejected the second proof of loss claim. They base this contention
on two grounds. First, they argue that they sustained no “out of pocket” losses until
their lawsuit was final, and that Stewart Title had no obligation to pay them until suit
was final and the losses were sustained. Second, they contend that Stewart Title
should be estopped from relying on limitations as an affirmative defense because the
company misled them as to when limitations began to run.
          Out-of-Pocket Losses/Final Judgment
          The Hadnots rely on language from this Court’s disposition of the underlying
suit and on language in the title policy to argue that their first loss claim was
submitted prematurely; thus they were unable to sue Stewart Title until the underlying
suit was final. In the underlying suit, this Court noted that a mechanic’s lien is not
created by agreement of the parties, nor is it self-enforcing; rather, a final judgment
is required before a mechanic’s lien is established or foreclosed. See Hadnot, 961
S.W.2d at 235. Although the Hadnots interpret this to mean that Stewart Title had no
obligation to cover the loss until the mechanic’s lien was established or foreclosed,
we reject this interpretation. This Court’s opinion in Hadnot does not so hold, and
we can find no other authority that does. Generally, a cause of action for breach of
an insurance contract accrues on the date coverage is denied. See Murray, 800
S.W.2d at 828-29; see also Martinka, 836 S.W.2d at 776. Here, the policy provides
not only a duty to indemnify the policyholder for a covered loss, but also the duty to
defend the policyholder against a covered claim and a limited obligation to indemnify
the policyholder against anyone to whom the policyholder may transfer or sell the
property. The applicable provisions of the policy include:
OUR DUTY TO DEFEND AGAINST COURT CASES
We will defend your title in the part or parts of a court case involving a
Title Risk covered by this Policy. We will pay the costs, attorney’s fees,
and expenses that we incur in that defense. We will not pay for the parts
of a case not involving a covered title risk. You may disapprove our
choice of attorney for reasonable cause. We can end this duty to defend
your title by exercising any of our options listed in Item 4 of the
Conditions.

Item 4 of the Conditions provides:

          4. OUR CHOICES WHEN YOU NOTIFY US OF A CLAIM
 
a. After we receive your claim notice or in any other way learn of a
matter for which we are liable, we can do one or more of the following:

                    (1) Pay the claim against your title.
 
(2) Negotiate a settlement.
 
(3) Prosecute or defend a court case related to the claim.
 
(4) Pay you the amount required by this Policy.
 
(5) Take other action under Section 4b.
 
(6) Cancel this policy by paying the Policy Amount, then in force,
and only those costs, attorneys’ fees and expenses incurred up to
that time that we are obligated to pay.

          We can choose which of these to do.
 
b. If you report to us that a covered title risk exists, we will promptly
investigate to determine if that covered title risk is valid and not barred
by law or statute. A covered title risk is a title risk that this Policy does
not exclude or except.
 
If we conclude that your claim, or any part of your claim, is covered by
the policy, we will take one or more of the following actions to the
extent that it is covered:
 
(1) Institute all necessary legal proceedings to clear the title to the
property;
 
(2) Indemnify you pursuant to the terms of the policy;
 
(3) Issue a new title policy without making exception to the
covered title risk. If another insurer issues the new title policy to
your purchaser, tender or other transferee without making
exception to the covered title risk, we will indemnify the other
insurer.
 
(4) Secure a release of the covered title risk.

Based on the obligations identified in the policy, it is clear that the injury to the
Hadnots was not just the refusal to pay the claim, but also the refusal to defend the
suit. We are persuaded that this injury was the event that began the running of
limitations.
          Citing Pena v. State Farm Lloyds, 980 S.W.2d 949 (Tex. App.—Corpus Christi
1998, no pet.), the Hadnots contend that timely claims for additional payments may
begin the statute of limitations running anew. Id. at 954. While this was true in
Pena, the facts in Pena distinguish it from the case before us. At the time the second
claim was denied, State Farm had already paid the Penas’ first claim for damage to
their home’s foundation. Id. There was no injury resulting from the first claim,
because it was paid. The injury occurred when the second claim was denied, and the
limitations for suing on the denial of the claim began to run on the date it was denied. 
Id. Here, the injury occurred when the first claim was denied.
          The Hadnots also rely on language in a different provision in the policy to
argue that a final judgment was a prerequisite to submitting a claim. They quote a
sentence that says, “We do not have to pay your claim until your case is finally
decided.” The full text of the paragraph is as follows:
You must cooperate with us in handling any claim or court case and give
us all relevant information. We must repay you only for those
settlement costs, attorneys’ fees and expenses that we approve in
advance. When we defend or sue to clear your title, we have a right to
choose the attorney. You have the right to disapprove our choice of
attorney for reasonable cause. We can appeal any decision to the
highest court. We do not have to pay your claim until your case is
finally decided. We do not agree that the matter is a covered title risk
by defending.

When an insurance company chooses to pay a claim is an issue separate from what
event triggers the running of a statute of limitations. We see nothing in the wording
of this portion of the policy that prevents the filing of a claim at any time. We also
see nothing in this policy provision to indicate that the statute of limitations cannot
begin to run until an underlying suit is final. The Hadnots have not provided any
authority for this contention, nor has our research revealed any. Finally, we note that
the duty to indemnify is “properly justiciable by declaratory judgment before the
rendition of a judgment in the underlying suit.” Farmers Texas County Mut. Ins. Co.
v. Griffin, 955 S.W.2d 81, 83 (Tex. 1997). This, too, negates the proposition that the
Hadnots could not sue Stewart Title until the lien suit was final. 
          In sum, we cannot agree that the cause of action accrued when the second proof
of loss claim was filed in 1998. Rather, the statute of limitations began to run on the
Hadnots’ claim on October 21, 1994, when it was denied by Stewart Title. We turn
next to the issue of whether Stewart Title was estopped from asserting this defense.
          Estoppel
          The Hadnots argue that Stewart Title should be estopped from relying on the
affirmative defense of limitations because it misled them as to when limitations began
to run. They assert that the final paragraph of the August 13, 1997, letter denying
coverage for the third time deceived them as to how long they had to file suit. This
paragraph provides:
You are hereby notified that you have the right to contest the Denial
of the Claim by instituting litigation if you desire. There are deadlines
or limitations that require such litigation to be commenced within 2
or 4 years from your receipt of this notice, depending upon the cause
of action you assert. In the event an action is not commenced within
these time deadlines your right to contest the action of the company
may be lost. You should consult your attorney for more specific
advice and information in this regard.

The problem with the Hadnots’ argument is that an identical paragraph appeared at
the end of the denial letter sent on October 21, 1994, informing them of their right to
contest the denial of the claim by filing suit within two or four years. This is
evidently a “boilerplate” paragraph included whenever a proof of loss claim is filed. 
In addition, the Hadnots were represented by counsel for a number of years; thus, they
cannot claim that their status as laypersons led to their misunderstanding. 
          We hold that Stewart Title was not estopped from asserting the defense of
limitations.
          We sustain Stewart Title’s first issue.
Conclusion
          Stewart Title established its limitations defense as a matter of law, and the trial
court erred in denying its motion for summary judgment. Because limitations barred
the suit, the issue of whether the mechanic’s lien claims were a covered risk is moot.
We need not address the issue except to hold that the trial court also erred in
rendering summary judgment for the Hadnots. 
          We reverse the trial court’s rendition of summary judgment on the Hadnot’s
motion and its order denying Stewart Title’s motion for summary judgment, and
render a take-nothing judgment against the Hadnots.
 

                                                             Evelyn V. Keyes
                                                             Justice


Panel consists of Justices Taft, Keyes, and Higley.