**Opinion issued August 6, 2019**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-19-00068-CV

———————————

## LAWRENCE R. WOOD, Appellants

## V.

## MINH-TAM "TAMMY" TRAN AND TAMMY TRAN AND ASSOCIATES, Appellees

On Appeal from the 152nd District Court
Harris County, Texas
Trial Court Case No. 2017-33605

## MEMORANDUM OPINION

Minh-Tam "Tammy" Tran and Tammy Tran and Associates (collectively, Tran) represented Lawrence Wood pursuant to the terms of an engagement agreement the parties executed in October 2002. Wood initiated the underlying suit

in 2017, claiming that Tran breached the agreement allegedly by retaining excessive fees.

Tran moved for summary judgment, contending that Wood's breach-of-contract claims were barred by the applicable statute of limitations. The trial court granted Tran's motion, and Wood appeals, contending that the trial court did not identify the proper accrual date. We affirm.

## BACKGROUND

In September 2002, Tran agreed to represent Wood, who was doing business as Wood Resources, in a suit that stemmed from a November 2001 fire at Wood's recycling and disposal factory. At first, Tran's representation involved defending Wood against Harris County's lawsuit to recover costs associated with extinguishing the fire, including charges for work performed by Boots & Coots, a private firefighting company under contract with the County. As the case developed, Wood and Tran discussed the possibility of bringing a third-party claim against Boots & Coots on the theory that it had overcharged for the work by prolonging the fire. Wood and Tran also discussed having Tran represent Wood in collecting charges owed by customers with delinquent accounts.

A month later, Tran and Wood executed a new engagement contract that expanded the scope of Tran's representation to incorporate these additional matters. Wood agreed to pay a "flat amount of $50,000" to cover all costs and expenses in

2

the third-party claim against Boots & Coots and the collection claims to be brought on Wood's behalf. The parties agreed that on recovery or settlement of the claims,

> said contingent attorneys' fee will be figured on the total net recovery or settlement prior to deduction for Firm's costs, expenses, and fees of any kind. Upon recovery, the $50,000 advance by Client shall be reimbursed to Client with all costs and expenses to be included within Firm's contingent fee.
>
> > 30% of any settlement or recovery made before suit is filed thereon;
> >
> > 40% of any settlement or recovery made after suit is filed;
> >
> > 45% of any settlement or recovery made after a notice of appeal has been given or an appeal bond has been filed.

Wood recalled that his uncle negotiated the terms of the fee agreement with Tran. Wood and Tran signed the agreement on October 9, 2002.

Tran litigated the third-party claim against Boots & Coots on Wood's behalf. In 2003, the parties settled it for $50,000. Wood met with Tran at her office to finalize the settlement. He signed the Boots & Coots settlement agreement and the settlement statement, and he endorsed the settlement check.

Tran sent a December 13, 2003 letter to Wood confirming their meeting and informing him that, "[o]nce the [settlement] check clears, all settlement documents signed and this portion of the case is dismissed, I will dis[burse] the settlement funds to you after subtracting my attorney's fee of 40% of the settlement amount (or 20,000), as previously agreed." Wood signed the letter to memorialize his acceptance of the settlement amount and the apportionment for attorney's fees.

In January 2004, Wood received copies of the engagement agreement, the signed settlement statement, the signed settlement agreement, and a $30,000 check. The settlement check did not include reimbursement of the $50,000 advance. According to Wood, he did not demand the reimbursement at the time because he had forgotten about it.

David Tang, a lawyer with the Tran firm, assisted with the collection cases. Wood met with Tang to discuss the status of the filed cases on March 5, 2003. Tang sent a letter the same day confirming their meeting and providing a list of the seven cases and their cause numbers.

Tran settled one of the collection matters, a claim against Etchstone Construction. The case settled at a March 2005 mediation attended by Tang. Tang testified that Wood was present at the mediation and the mediator's March 11, 2005 report to the trial court likewise reflects Wood's attendance, but Wood denies that he was there. Tang testified that the parties agreed to settle the suit for $12,500 or $13,500.

Pursuant to the engagement agreement, Wood was to receive 60% of the settlement, but he did not receive any funds. No evidence shows that Tran received a settlement check from Etchstone and, according to Etchstone's response to a subpoena duces tecum in this case, Etchstone could not locate any records relating to the lawsuit or mediation or showing that it ever issued a settlement check. Wood

admitted that by July 2005, Tran had told him that the Etchstone lawsuit was over and that they were "not getting money out of it."

In 2017, Wood discovered a copy of the engagement agreement in his warehouse while he was cleaning out some old files. After Wood found his copy of the agreement, he looked at the district clerk's records online, which showed that the Etchstone suit had settled at mediation and that the trial court signed an order dismissing the suit for want of prosecution on April 18, 2005.[1] Wood also reviewed the Etchstone case file in the clerk's office, where he obtained a copy of the mediator's report to the trial court.

In March 2017, Wood sent Tran letters demanding payment of the allegedly unreimbursed funds and an accounting of the collection cases. When Wood received no response, he brought suit, claiming Tran had charged excessive attorney's fees. Before Tran's summary-judgment motion was submitted, Wood dismissed all of his claims except for breach of contract.

## DISCUSSION

The parties dispute when Wood's breach-of-contract claims accrued. According to Wood, his claims accrued when Tran failed to comply with his 2017 written demand for payment. Tran contends that Wood's breach-of contract claims

---

[1] Wood admittedly knew by 2003 that he could obtain case records from the courthouse.

accrued, and the applicable statute of limitations began to run, when his third-party claim against Boots & Coots and the collection suit against Etchstone were settled in 2003 and 2005, respectively.

**Summary-Judgment Standard of Review**

We review a trial court's summary judgment de novo. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005); *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003). We take as true all evidence favorable to the non-movant, and we indulge every reasonable inference and resolve any doubts in the non-movant's favor. *Valence Operating*, 164 S.W.3d at 661; *Knott*, 128 S.W.3d at 215.

To prevail on a traditional motion for summary judgment, a movant must prove that no genuine issue exists as to any material fact and that it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Little v. Tex. Dep't of Crim. Justice*, 148 S.W.3d 374, 381 (Tex. 2004). Once the movant produces sufficient evidence to establish its right to judgment, the burden shifts to the nonmovant to bring forward admissible controverting evidence to raise a fact issue. *See Van v. Pena*, 990 S.W.2d 751, 753 (Tex. 1999). A genuine issue of material fact arises if reasonable and fair-minded factfinders could differ in their conclusions in light of all of the summary-judgment evidence. *See Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 755 (Tex. 2007).

A defendant is entitled to summary judgment on an affirmative defense if the defendant pleads and conclusively proves all the elements of the affirmative defense. *Rhône–Poulenc, Inc. v. Steel*, 997 S.W.2d 217, 223 (Tex. 1999*); Shanklin v. Bassoe Offshore (USA) Inc.*, 415 S.W.3d 311, 316 (Tex. App.—Houston [1st Dist.] 2013, pet. denied). To prevail on the affirmative defense of limitations, the defendant must conclusively prove when the cause of action accrued and, if the plaintiff has pleaded the discovery rule or another defensive theory, conclusively negate its application. *Pustejovsky v. Rapid–Am. Corp.*, 35 S.W.3d 643, 646 (Tex. 2000); *KPMG Peat Marwick v. Harrison Cty. Hous. Fin. Corp.*, 988 S.W.2d 746, 748 (Tex. 1999).

**Statute of Limitations**

The statute of limitations applicable to a cause of action for breach of contract is four years. *See* TEX. CIV. PRAC. & REM. CODE § 16.004; *see also Stine v. Stewart*, 80 S.W.3d 586, 592 (Tex. 2002). Whether Wood's breach-of-contract claim is barred by the statute of limitations depends on its accrual date.

When a cause of action accrues is usually a question of law. *Knott*, 128 S.W.3d at 221; *Moreno v. Sterling Drug, Inc.*, 787 S.W.2d 348, 351 (Tex. 1990). Under the legal-injury rule, a claim generally accrues "when a wrongful act causes some legal injury, even if the fact of injury is not discovered until later, and even if all resulting damages have not yet occurred." *S.V. v. R.V.*, 933 S.W.2d 1, 4 (Tex. 1996); *see also Dunmore v. Chicago Title Ins. Co.*, 400 S.W.3d 635, 641 (Tex. App.—Dallas 2013,

7

no pet.). A breach-of-contract claim accrues when, according to the agreement's language, facts come into existence that authorize the claimant to seek a judicial remedy. *Exxon Mobil Corp. v. Rincones*, 520 S.W.3d 572, 591 (Tex. 2017); *see Archer v. Tregellas*, 566 S.W.3d 281, 288 (Tex. 2018) ("[A] cause of action for breach of contract accrues at the moment the contract is breached.") (citing *Cosgrove v. Cade*, 468 S.W.3d 32, 39 (Tex. 2015)).

**Analysis**

Tran's summary-judgment motion contends that Wood's suit for breach of contract is time-barred because the applicable statute of limitations accrued and began to run in 2003 and 2005, when the Boots & Coots and the Etchstone lawsuits settled. Wood contends that his claims did not accrue until 2017, when Tran failed to honor his written demand for payment.

The plain terms of the fee provision resolve this issue. They declare that, "[u]pon recovery, the $50,000 advance by Client shall be reimbursed to Client with all costs and expenses to be included within Firm's contingent fee." This language makes clear that Wood's claim for breach accrued when Tran allegedly failed to apportion the settlement funds in accordance with the agreement.

Wood's cause of action for breach of contract with respect to the Boots & Coots settlement thus accrued in 2003— "upon recovery" from Boots & Coots. At that time, Wood received Tran's letter about the settlement that failed to

acknowledge that he was due any reimbursement for the advance and a firm check for $30,000—described as his portion of the settlement—that did not contain any reimbursement. Any injury arising from the Etchstone settlement occurred no later than July 2005, when Tran told Woods that the lawsuit was over and that they were "not getting money out of it."

Wood's failure to recall the fee provision's terms when these events occurred does not affect the accrual date. Absent proof of mental incapacity, a party who signs a contract is presumed to have read it and understood it. *See Cosgrove*, 468 S.W.3d at 34–35 (declaring that party who signs deed is presumed, as matter of law, to have immediate knowledge of omissions and mistakes in deed). This presumption applies to Wood: having signed the engagement agreement, he is charged as a matter of law with knowing and understanding the fee provision's terms. *See id.* at 37.

Neither of the cases Wood relies on support his position. In *Tamimi Global Co. v. Kellogg Brown & Root, L.L.C.*, 483 S.W.3d 678 (Tex. App.—Houston [14th Dist.] 2015, no pet.), a subcontractor of KBR that provided dining and utility services to military personnel contended that KBR breached a contractual termination-for-convenience clause. *Id.* at 685–86. KBR contended that limitations barred the subcontractor's claim because four years had passed since KBR's last termination notice. *Id.* at 686. Our sister court, though, observed that the subcontractor's breach-of-contract claim did not arise from KBR's termination,

9

which the contract permitted, but from KBR's refusal to pay the contractual consideration it owed for invoking the termination-for-convenience clause. *Id.* Thus, "each alleged breach was KBR's subsequent refusal to perform the action it promised" under that clause. *Id.* at 688.

The fee agreement in this case, unlike the contract in *Tamimi*, does not describe any procedures for requesting payments. Because Wood was owed reimbursement of the advance "upon recovery," breach occurred when he received a share of a recovery or settlement that did not include the contracted-for reimbursement.

*Stewart Title Guaranty Co. v. Hadnot*, 101 S.W.3d 642 (Tex. App.—Houston [1st Dist.] 2003, pet. denied), involved a claim for breach of a title insurance policy issued for a residential property. *Id.* at 643. Before the policy was issued, the homeowners contracted to have a home built. *Id.* When the home was completed, the homeowners paid their contractor and bought the title insurance policy. *Id.* The contractor failed to pay some of its subcontractors, who contacted the homeowners with materialmen's affidavits and claims. In 1994, the homeowners submitted a proof-of-loss form to the title company, which denied their claim on the ground that it was excluded from coverage. *Id.* Over the course of the subcontractors' suit, the homeowners twice sought reconsideration of the title company's decision—once in 1995 and again in 1998—but the title company maintained its position. *Id.*

The homeowners sued the title company for breach of contract in 2001. The title company filed a motion for summary judgment based on the statute of limitations bar, which the trial court granted. *Id.* at 644. This Court affirmed the trial court's judgment, holding that the homeowners' claim accrued, and the statute of limitations began to run, when the title company denied the homeowners' claim in 1994. *Id.* at 647.

The language from *Hadnot* that Wood cites in his brief is in a discussion about another case, *Pena v. State Farm Lloyds*, 980 S.W.2d 949 (Tex. App.—Corpus Christi 1998, no pet.). The homeowners in *Hadnot* relied on *Pena* to assert that limitations accrued on the date they made their second claim, but this Court distinguished *Pena*, pointing out that no injury resulted from the Pena's first claim because the insurance company paid it. Wood repeats the argument made in *Hadnot* and we reject it here for the same reason we did in that case: the plaintiff's claim accrued when the original injury occurred, not when the defendant rejected a later demand to remedy that injury.

Based on the language of the fee provision and the undisputed facts, we hold that Wood's breach-of-contract claims accrued more than four years before he filed suit against Tran. As a result, the trial court properly granted summary judgment in favor of Tran based on the statute-of-limitations bar.

11

# CONCLUSION

We affirm the judgment of the trial court.

Gordon Goodman
Justice

Panel consists of Justices Keyes, Goodman, and Kelly.