Bessie Irene HOGAN and Bill
Hogan, Appellants,

v.

THE HEARST CORPORATION, d/b/a
The San Antonio Express–News and
Elisandro Garza, Appellees.

No. 04–96–00326–CV.

Court of Appeals of Texas,
San Antonio.

April 16, 1997.

T. Allen Rasmussen, The Law Offices of T. Allen Rasmussen, San Antonio, for appellants.

Mark J. Cannan, Lang, Ladon, Green, Coghlan & Fisher, P.C., San Antonio, for appellee.

Before STONE, GREEN and DUNCAN, JJ.

GREEN, Justice.

Bessie and Bill Hogan (the Hogans) appeal from the trial court's granting of Hearst Corporation and Elisandro Garza's motion for summary judgment. In four points of error, the Hogans assert that the trial court erred in overruling their special exceptions to Hearst and Garza's motion for summary judgment and in granting the summary judgment.

### Facts

On May 19, 1994, Benny Hogan was arrested for indecent exposure in San Antonio's McAllister Park. On June 2, 1994, the San Antonio Express–News, owned by Hearst, ran an article written by Elisandro Garza on the various arrests made by the San Antonio Police Department at local parks. The article discussed the police department's undercover operation targeting sex offenders in several of San Antonio's public parks. Specifically, the article provided:

A more than three-month undercover operation at local parks targeting sex offenders has lead to the arrest of 134 people, including members of the medical profession, educators and clergy, police said Wednesday.

All of the arrests were men who were charged with, among other offenses, indecent exposure, public lewdness and prostitution at six public parks.

McAllister Park on the North Side boasted the most arrests of any other park, 60, which included 31 indecent exposure and 11 public lewdness charges, reports showed.

A chart released by the police indicated Padre Park on the South Side showed the least sexual activity. One person was charged with indecent exposure, while three others were charged with assaults.

The remaining four parks targeted were Olmos, John James, Southside Lions and Woodlawn.

Capt. William C. Smith, commander of special investigations at the San Antonio Police Department, which includes the vice unit, said during a news conference that while police suspected illicit sex activity was occurring at the parks, they were not aware of its magnitude.

Investigators were alarmed at the amount occurring and the brazenness displayed by offenders, Smith said.

Individuals actually would walk up to undercover officers and grab the officers' crotches or expose themselves, police said.

Others were caught committing sexual acts in bathrooms or in brushy areas, Smith said.

Police added that they had completed Phase I of the operation, which began in early March after residents' complaints about families being afraid to use the parks.

Now Phase II will begin. It will include continuing a uniform presence at the parks.

The article also contained a chart that specified the number of arrests made at each park and enumerated what offenses occurred at each park. To the side of the main article appeared several paragraphs under the heading "List of suspects from latest roundup," reading:

The following are the names of suspects arrested on sex offense charges in the San Antonio Police Department's park roundup since April.

Names of suspects in the roundup from February though March were published in the San Antonio Express–News on April 6.

Suspects are listed by offense, name, date of birth and the park where the arrest was made....

After these introductory paragraphs, the article continued by listing the names of the suspects, among which appeared the name "Benny Hogan, 1–3–53, McAllister" under the heading for indecent exposure. Benny committed suicide shortly after the publication of this article.

On behalf of Benny's estate, Bessie Hogan, Bill Hogan, Robert Lee Hogan, Jr., Barbara Green, Bessie Williamson, and Brenda Hogan brought suit against Hearst and Garza.[1] In their petition, the Hogan family contended that Benny read Garza's article and suffered extreme humiliation, which ultimately led to his suicide. They claimed that Benny was a "closeted" homosexual and that Hearst and Garza printed private facts about Benny which essentially "outed" Benny against his wishes. In the lawsuit, on behalf of Benny's estate, the Hogan family alleged that Hearst and Garza violated Benny's right to privacy and intentionally inflicted emotional distress on Benny; they alleged these causes of action survived Benny's death. They also brought a wrongful death action as beneficiaries of the estate.

After initial discovery, Hearst and Garza moved for summary judgment, contending they were entitled to summary judgment (1) on the privacy issue since the facts published were not private and since the facts obtained were accurate information available through public records, (2) on the intentional infliction of emotional distress issue since their conduct could not give rise to that cause of action, since their speech was protected by the First Amendment of the U.S. Constitution, and since there was no malice, and (3) on the wrongful death cause of action since they did not owe a duty to the plaintiffs, the First Amendment protected their conduct, and they did not commit a wrongful act or negligence.

The plaintiffs filed a response to this motion for summary judgment specially excepting to several paragraphs in the motion;

they wanted to know whether Hearst and Garza were asserting an affirmative defense of truth to the claims of invasion of privacy, intentional infliction of emotional distress, and wrongful death. They specially excepted to the defendants' statement that "[n]o conduct of the Defendants as alleged by the Plaintiffs constitutes acts that can give rise to that cause of action" on the basis that it was conclusory and unsupported by the facts. They also specially excepted to the defendants' claim that the plaintiffs admitted to the accuracy of the police offense report when in fact they had only admitted that the copy attached was a true and correct copy. In their response, the plaintiffs claimed that a question of fact existed regarding whether the article published private facts and whether the article labeled Benny as a homosexual. They pointed out that truth and malice were not defenses to these causes of action.

The trial court denied all of the plaintiffs' special exceptions except the one concerning the admission of the accuracy of the police offense report, which it granted. The defendants then amended their motion to reflect that the plaintiffs admitted only that the offense report was a true and correct copy. The court then granted Hearst and Garza's motion for summary judgment and entered a take-nothing judgment against the plaintiffs.

After the entry of the judgment, only Bessie and Bill Hogan perfected an appeal. On appeal, the Hogans claim that the court erred in denying their special exceptions and erred in granting the defendants' motion for summary judgment on all grounds.

### *Discussion*

#### *Special Exceptions*

In their first point of error, the Hogans claim that the trial court erroneously denied their special exceptions to the defendants' motion for summary judgment.

The Hogans have not presented any argument demonstrating how the alleged error "amounted to such a denial of the rights of

the appellant[s] as was reasonably calculated to cause and probably did cause the rendition of an improper judgment in the case, or was such as probably prevented the appellant from making a proper presentation of the case to the appellate court...." *See* TEX. R.APP.P. 81 (b)(1). Seeing no harm in the trial court's denial of the special exceptions, we overrule the Hogans' first point of error.

### Summary Judgment

In the Hogans' second, third, and fourth points of error, they allege the trial court erroneously granted the defendants' motion for summary judgment.

To prevail on summary judgment, the movant must show there are no genuine issues of material fact and he is entitled to judgment as a matter of law. TEX.R.CIV.P. 166a(c); *Cathey v. Booth,* 900 S.W.2d 339, 341 (Tex.1995); *Nixon v. Mr. Property Management Co.,* 690 S.W.2d 546, 548 (Tex.1985). In determining whether a material fact issue exists, the court considers all evidence favorable to the nonmovant as true. *Cathey,* 900 S.W.2d at 341; *Nixon,* 690 S.W.2d at 548–49. If the defendant moves for summary judgment, he must negate at least one element of the plaintiff's cause of action or conclusively establish an affirmative defense. *Cathey,* 900 S.W.2d at 341. In short, a summary judgment entered in favor of a defendant is proper only if the plaintiff cannot succeed on any of the theories pled as a matter of law. *Chopra v. Hawryluk,* 892 S.W.2d 229, 232 (Tex.App.—El Paso 1995, writ denied) (citing *Delgado v. Burns,* 656 S.W.2d 428, 429 (Tex. 1983)).

### Invasion of Privacy

The Hogans' second point of error challenges the court's granting summary judgment in favor of the defendants on Benny's estate's claim for invasion of privacy.

■ An individual has the right to be free from the public disclosure of embarrassing private facts about the individual. *Industrial Found. of the South v. Texas Indus. Accident Bd.,* 540 S.W.2d 668, 682 (Tex.1976), *cert. denied,* 430 U.S. 931, 97 S.Ct. 1550, 51 L.Ed.2d 774 (1977). To establish the tort of invasion of privacy based upon the public disclosure of private facts, the plaintiff must demonstrate that (1) publicity was given to matters concerning his private life, (2) the publication of which would be highly offensive to a reasonable person of ordinary sensibilities, and (3) the matter publicized was not of legitimate public concern. *Star–Telegram, Inc. v. Doe,* 915 S.W.2d 471, 473–74 (Tex. 1995); *Industrial Found. of the South,* 540 S.W.2d at 682. Hearst and Garza's motion for summary judgment attacked the first element.

■ The State may not protect an individual's privacy interests by recognizing a cause of action in tort for giving publicity to highly private facts if those facts are a matter of public record. *Industrial Found. of the South,* 540 S.W.2d at 684; *see Cox Broadcasting Corp. v. Cohn,* 420 U.S. 469, 494–97, 95 S.Ct. 1029, 1045–47, 43 L.Ed.2d 328 (1975). Once information is made a matter of public record, the protection accorded freedom of speech and press by the First Amendment may prohibit recovery for injuries caused by any further disclosure of and publicity given such information. *Industrial Found. of the South,* 540 S.W.2d at 684. Police offense and arrest records are public records, subject to certain limitations such as when the release of the particular information may impede an on-going investigation or may raise safety concerns for confidential informants. Tex. Att'y Gen. ORD–612 (1992); *see Houston Chronicle Publishing Co. v. City of Houston,* 531 S.W.2d 177, 186–87 (Tex.Civ.App.—Houston [14th Dist.] 1975), *writ ref'd n.r.e per curiam,* 536 S.W.2d 559 (Tex.1976); RESTATEMENT (SECOND) OF TORTS § 652D (1977) ("Authorized publicity includes ... arrests"). Regarding arrests, the press and the public are entitled to know the offense committed, location of the crime, identification and description of the complainant, the premises involved, the time of the occurrence, property involved, vehicles involved, description of the weather, a detailed description of the offense in question, the names of the investigating officers, *Houston Chronicle Publishing Co.,* 531 S.W.2d at 186–87, and the arrestee's name, alias, social security number, race, sex, age, occupation, address, police department identification

number, and physical condition, Tex. Att'y Gen. ORD–394 (1983). Additionally, the Supreme Court has determined that the State's publication of an arrest does not violate an individual's right to privacy guaranteed by the U.S. Constitution. *Paul v. Davis*, 424 U.S. 693, 713, 96 S.Ct. 1155, 1166, 47 L.Ed.2d 405 (1976).

■ Here, Hearst and Garza obtained the information on which the article in question was based from a public record. In Garza's affidavit filed in support of the motion for summary judgment, Garza stated that he received all of the information used in the article from the San Antonio Police Department; he noted that police reports were routinely made available to him and other members of the public. The Hogans did not contradict this. Contrary to the Hogans' assertion, the article never labeled Benny a homosexual; instead the article described the undercover operation and reported the names of the persons arrested based upon facts obtained from the police department. The article did not even detail in what manner or to whom Benny exposed himself. In regards to Benny, the article simply printed what case law has previously determined to be public information—Benny's name, birth date, and the offense for which he was arrested.

Because Hearst and Garza obtained the information from public records, they proved that the facts published were not private information and, consequently, negated the first element of Benny's estate's claim for the invasion of Benny's privacy. The trial court did not err in granting summary judgment on this claim. The Hogans' second point of error is overruled.

*Intentional Infliction of Emotional Distress*

In their third point of error, the Hogans argue that the court should not have granted summary judgment against them on the intentional infliction of emotional distress claim they made on behalf of Benny's estate.

■ To recover for the intentional infliction of emotional distress, a plaintiff must establish that (1) the defendant acted intentionally or recklessly, (2) the conduct was extreme and outrageous, (3) the defendant's

conduct caused the plaintiff emotional distress, and (4) the emotional distress was severe. *Twyman v. Twyman*, 855 S.W.2d 619, 621–22 (Tex.1993). In their motion for summary judgment, Hearst and Garza attempted to negate element two and to set up a defense under the First Amendment.

The Hogans argue that the defendants' *purpose* in printing the article, not the printing of the article itself, was outrageous. They allege that Hearst and Garza intended to incite the public against the gay community. We believe, however, that this argument goes to the first element of their claim, the requisite mental state, and not to the determination of outrageousness. The defendants' summary judgment motion did not attack the mental state requirement but instead challenged the plaintiffs' ability to meet the outrageousness element, of which the conduct in question was the publishing of the article.

■ Extreme and outrageous conduct is conduct that "goes beyond all possible bounds of decency" and that is "regarded as atrocious, and utterly intolerable in a civilized community." *Wornick Co. v. Casas*, 856 S.W.2d 732, 734 (Tex.1993). Whether a defendant's conduct is extreme and outrageous is a question for the court to determine. *Id.* A defendant cannot be found liable when he has done no more than insist on his legal rights in a permissible way, even if he is aware that such insistence is certain to cause emotional distress. *Reeves v. Western Co. of N. Am.*, 867 S.W.2d 385, 392 (Tex.App.—San Antonio 1993, writ denied) (citing RESTATEMENT (SECOND) OF TORTS § 46, cmt. g); *see Wornick Co.*, 856 S.W.2d at 735.

■ As discussed above, Hearst and Garza were acting within their legal rights when they published the names of the persons arrested for specific offenses. The information used in writing the article was legitimately obtained from records available to the public. Although we express no opinion concerning whether a newspaper, under these circumstances, *should* exercise its right to publish the names of persons arrested for lewd conduct, we cannot conclude that a newspaper's otherwise lawful conduct was "beyond all possible bounds of decency,"

"atrocious, and utterly intolerable in a civilized community." *See Diamond Shamrock Ref. and Mktg. Co. v. Mendez,* 844 S.W.2d 198, 202 (Tex.1992) (noting that court was not required to condone behavior in order to hold the conduct did not reach the level of "outrageousness"). Hearst and Garza's conduct in publishing information contained in public records, as a matter of law, was not outrageous. Because Hearst and Garza conclusively negated the second element of the emotional distress cause of action, the trial court did not err in granting summary judgment in favor of Hearst and Garza on this claim. We overrule appellants' third point of error.

*Wrongful Death*

The Hogans' fourth point of error attacks the court's granting the defendants' motion for summary judgment on the Hogans' claim for wrongful death.

A wrongful death action is permitted under section 71.001, *et. seq.* of the Texas Civil Practice & Remedies Code. A person is liable for damages arising from an injury that causes an individual's death if the injury was caused by the person's wrongful act, neglect, carelessness, unskillfulness or default. TEX.CIV.PRAC. & REM.CODE ANN. § 71.002(b) (Vernon 1986). Such action can be maintained only if the individual injured would have been entitled to bring an action for the injury if he had lived. *Id.* at § 71.003(a). An action to recover for wrongful death is for the exclusive benefit of the surviving spouse, children, and parents of the deceased. *Id.* at § 71.004(a). Surviving siblings of the deceased do not have standing to bring a wrongful death action. *See Sneed v. Sneed,* 705 S.W.2d 392, 398 (Tex.App.—San Antonio 1986, writ ref'd n.r.e.), *overruled on other grounds by Shoemake v. Fogel, Ltd.,* 826 S.W.2d 933 (Tex.1992). Here, out of all of the original plaintiffs, only Benny's mother, Bessie Irene Hogan, had standing to bring the wrongful death action.

To succeed on her wrongful death claim premised upon negligence, Mrs. Hogan needed to prove that (1) the defendants owed Benny a duty, (2) the defendants breached that duty, and (3) the breach proximately resulted in damages. *See Greater Houston Transp. Co. v. Phillips,* 801 S.W.2d 523, 525 (Tex.1990); *El Chico Corp. v. Poole,* 732 S.W.2d 306, 311 (Tex.1987). Hearst and Garza's motion challenged the assertion that they owed a duty or that their conduct was negligent. They also presented a First Amendment defense.

For the purposes of this point of error, we assume, without deciding that Mrs. Hogan can establish her cause of action for wrongful death. The imposition of damages on a newspaper for publishing information available in public records would infringe upon the newspaper's First Amendment rights. When a newspaper publishes truthful information that it has lawfully obtained, punishment may lawfully be imposed only when narrowly tailored to a state interest of the highest order. *The Florida Star v. B.J.F.,* 491 U.S. 524, 541, 109 S.Ct. 2603, 2613, 105 L.Ed.2d 443 (1989). The truthful information must be about a matter of public significance. *Id.* at 536, 109 S.Ct. at 2610–11. "[W]here the government itself provides information to the media, it is most appropriate to assume that the government had, but failed to utilize, far more limited means of guarding against dissemination than the extreme steps of punishing truthful speech." *Id.* at 538, 109 S.Ct. at 2611. If the government has failed to police itself in releasing information, the imposition of damages for its subsequent publication is not narrowly tailored to the state's interest. *Id.*

Here, the undercover investigation and its results were of interest to the public, especially in light of the citizens' request that the police investigate the parks. The Hogans admit that the article's information concerning Benny was true, and Garza, through his affidavit, testified that the police department released the data contained in the article to the public. Thus, the newspaper printed truthful information concerning a matter of public interest which it obtained from public records. Because the police released the data used in the article, pursuant to *The Florida Star* decision, the imposition of damages would not be narrowly tailored to a state interest of the highest order. Consequently, any restraints on Hearst and Garza

from printing Benny's name under the heading for indecent exposure would infringe upon Hearst and Garza's First Amendment rights. As result, Hearst and Garza successfully established an affirmative defense to Mrs. Hogan's wrongful death claim. Thus, the court did not err in granting summary judgment for Hearst and Garza on the wrongful death claim.

The Hogans' fourth point of error is overruled.

### Conclusion

Because we find that Hearst and Garza successfully negated elements of the Hogans' privacy and emotional distress claims and established an affirmative defense to the wrongful death claim, we conclude that the court did not err in granting the defendants' motion for summary judgment. Accordingly, the judgment of the trial court is affirmed.