Michael A. **CRUMRINE**, Appellant,

v.

**HARTE–HANKS TELEVISION, INC.**
**d/b/a Kens–TV, Appellee.**

No. 04–00–00247–CV.

Court of Appeals of Texas,
San Antonio.

Jan. 3, 2001.

Timothy B. Soefje, Law Office of Timothy B. Soefje, San Antonio, for Appellant.

Karl A. Basile, San Antonio, Paul C. Watler, Zachary B. Aoki, Jenkens & Gilchrist, P.C., Dallas, Mark L. Medley, Law Office of Mark L. Medley, P.C., San Antonio, for Appellee.

Sitting: PHIL HARDBERGER, Chief Justice, PAUL W. GREEN, Justice, KAREN ANGELINI, Justice.

### OPINION

Opinion by: PAUL W. GREEN, Justice.

Michael A. Crumrine appeals the trial court's grant of summary judgment in favor of Harte–Hanks Television, Inc. d/b/a KENS–TV ("KENS"). Crumrine filed suit against KENS for invasion of privacy after the news station aired stories regarding his ongoing custody dispute, publicizing he was a gay, HIV-positive police officer. Crumrine appeals the summary

judgment on two grounds. First, Crumrine argues the summary judgment was improper because KENS failed to establish the information was public and "newsworthy" as a matter of law. Second, Crumrine argues the summary judgment was improper because KENS failed to prove its First Amendment defense as a matter of law. Because Crumrine failed to raise an issue of material fact, we affirm the summary judgment.

### Factual Background

On July 22, 1997, Crumrine and his ex-wife, Brigid Carter ("Carter"), participated in a family law hearing regarding child support payments and the custody of their child. The hearing was not closed and no request to seal the record had been made. Carter had sole custody of the child and requested a modification of child support payments while Crumrine requested joint custody of the child. During the hearing, both Carter and Crumrine were questioned regarding Crumrine's homosexual lifestyle and HIV-positive status.

The day after the hearing, Carter contacted KENS, along with three other San Antonio television stations and the *San Antonio Express–News*. Carter informed KENS representatives of the hearing, including her opinion that Crumrine was a threat to the health and safety of their daughter due to his HIV-positive status. KENS, after receiving the unsolicited phone call from Carter, assigned the story to a reporter, who conducted an on-camera interview with the Carters and spoke to the judge presiding over the hearing. In addition, the reporter spoke with a sheriff's deputy, who confirmed the information about Crumrine and advised the hearing was the "talk of the courthouse."

Beginning on July 23, 1997 and continuing into the next day, KENS aired the Crumrine story eight times. The broadcasts never mentioned Crumrine's name, but did identify Carter and her attorney. In the first broadcast, the news anchor stated:

A San Antonio woman's attorney claims her client's ex-husband, who's a cop, is gay and HIV positive. Brigid Carter's attorney, Judy Wemmert, says she told this to a judge in district court yesterday.

Why? Well, Carter and her ex-husband, who's a Castle Hills police officer, are fighting for custody of their 4–year–old daughter. Judy Wemmert says her client's former husband wants joint custody, but she says she believes he'd be a threat to her daughter's health.

Seven months after the broadcasts, Crumrine obtained an *ex parte* order sealing the hearing transcript. This order was later vacated at KENS's request after this suit was filed. As such, the transcript of the record of the hearing remains open. KENS filed a motion for summary judgment, contending the information aired was public and protected by the First Amendment. Without stating the ground, the trial court granted summary judgment in favor of KENS.

### Standard of Review

■ To be entitled to judgment as a matter of law, KENS must disprove one element of Crumrine's invasion of privacy claim or conclusively establish its First Amendment defense. *See Hogan v. Hearst Corp.*, 945 S.W.2d 246, 250 (Tex. App.—San Antonio, no writ). If KENS establishes its right to summary judgment, the burden shifts to Crumrine to present an issue of material fact precluding summary judgment. *See id.* In deciding whether there were fact issues raised to preclude summary judgment, we take evidence favorable to Crumrine as true, indulge every reasonable inference in favor of Crumrine, and resolve all doubts in his favor. *See id.* When, as in this case, no ground for summary judgment is specified, we affirm on any meritorious theory advanced in the motion. *State Farm Fire & Cas. Co. v. S.S.*, 858 S.W.2d 374, 380 (Tex. 1993).

## Discussion

### A. Crumrine's Invasion of Privacy Claim

■ In Texas, an invasion of privacy claim has three elements: (1) publicity was given to matters concerning the plaintiff's private life; (2) publication of such facts would be highly offensive to a reasonable person of ordinary sensibilities; and (3) matters publicized are not of legitimate public concern. *Hogan,* 945 S.W.2d at 250. In its motion for summary judgment, KENS attacked the first and third elements of Crumrine's claim. Further, KENS asserted a First Amendment defense, seeking constitutional protection for publishing lawfully obtained, truthful information.

#### 1. *Was the information public or private in nature?*

■ Crumrine first argues he presented an issue of fact regarding the private nature of the information broadcast. However, the information broadcast was revealed during a judicial proceeding through the testimony of Crumrine and Carter. Once information is made a matter of public record, the First Amendment protection afforded the press may prohibit recovery for injuries caused by further disclosure of and publicity given such information. *Indus. Found. of the South v. Tex. Indus. Accident Bd.,* 540 S.W.2d 668, 684 (Tex.1976); *Hogan,* 945 S.W.2d at 250 (holding "[b]ecause [the reporters] obtained the information from public records, they proved that the facts published were not private information and, consequently, negated the first element of [the plaintiffs'] claim for invasion of privacy"). In this case, KENS aired the information in question after it was revealed in open court. We hold it is public as a matter of law.

#### 2. *Was the information "of legitimate public concern"?*

■ The determination of whether the matter is one of "legitimate public concern" must be made on a case-by-case basis, "considering the nature of the information and the public's legitimate interest in its disclosure." *Star–Telegram, Inc. v. Doe,* 915 S.W.2d 471, 474 (Tex.1995). In balancing the individual's right to privacy in regard to information of legitimate public concern, the Texas Supreme Court has told us:

> [I]t would be impossible to require [the media] to anticipate and take action to avoid every conceivable circumstance where a party might be subjected to the stress of some unpleasant or undesired notoriety without an unacceptable chilling effect on the media itself.

*Id.* at 474. In this case, KENS aired a story regarding a custody proceeding where one parent raised concerns for the child's safety. This information is "of legitimate public concern." We overrule Crumrine's first point of error.

### B. KENS's First Amendment Defense

■ KENS is protected by the United States and Texas Constitutions for broadcast of truthful information of public import that is lawfully obtained. *See Florida Star v. B.J.F.,* 491 U.S. 524, 533, 109 S.Ct. 2603, 105 L.Ed.2d 443 (1989); *Hogan,* 945 S.W.2d at 252. This protection is premised on the notion that once true information is disclosed in public court, there is no liability for giving publicity to that which is already public. *Cox Broadcasting Corp. v. Cohn,* 420 U.S. 469, 492, 95 S.Ct. 1029, 43 L.Ed.2d 328 (1975); *see San Antonio Express–News v. Roman,* 861 S.W.2d 265, 267–68 (Tex.App.—San Antonio 1993, no writ) (ordering trial court to remove gag order, stating "the media cannot be prevented from publishing accounts of judicial proceedings.... Once [the witness's] names were placed in the public record, before a courtroom of spectators, no constitutionally valid reason to limit access to that information existed").

In this case, Crumrine does not dispute the truthfulness of the information or whether it was lawfully obtained. Regarding whether the information was "of public

import," we note it originated from testimony elicited in open court during a child custody proceeding where Carter questioned the child's safety. We overrule Crumrine's second point of error.

### Conclusion

There is no genuine issue of material fact regarding whether the information broadcast was public or a matter of "legitimate public concern." Further, KENS proved its First Amendment defense as a matter of law. Having overruled Crumrine's points of error, we affirm the summary judgment.