COURT OF
APPEALS

                                                    EIGHTH DISTRICT
OF TEXAS

                                                               EL
PASO, TEXAS

 

JAN
PATTILLO,                                                  )         )                      No. 
08-01-00091-CV

                                                                              )

Appellant,                          )                             Appeal from

                                                                              )     

v.                                                                           )                     143rd District Court

                                                                              )

HERMAN TARIN and BILL
WEINACHT,          )                 of Reeves County, Texas

                                                                              )

Appellees.                          )                 (TC# 00-05-16713-CVR)

 

O
P I N I O N

 

Jan
Pattillo appeals from a summary judgment granted in
favor of Herman Tarin and Bill Weinacht.  We affirm.

FACTUAL SUMMARY

Jan
Pattillo acted as her husband=s
campaign treasurer during his race for Reeves County Commissioner in March of
2000.  Before the primary, Pattillo went to the Pecos Nursing Home and assisted Maria
M. Garcia in completing an application for a ballot by mail.[1]  The Reeves County Clerk received the
application on February 4, 2000.  Louise Cassell later helped Mrs. Garcia cast her ballot by mail.[2]








Around
March 6, Mrs. Garcia=s
granddaughter, Anabel Aguilar, visited her
grandmother.  Mrs. Garcia complained that
she had not received her ballot and wanted to know when she would get to
vote.  It was a matter of some concern to
her inasmuch as a family member was running for election.  Aguilar called the Reeves County Clerk=s office and was informed by someone in
that office that Mrs. Garcia had already voted.[3]  The person in the clerk=s office mistakenly told Aguilar that
Jan Pattillo had assisted Mrs. Garcia and added that
Mrs. Garcia had signed her name with an AX.@[4]  Because she had already voted according to
the records, Mrs. Garcia would not be permitted to vote again.  








Informed
of these facts by Aguilar, Mrs. Garcia insisted that she had not voted, she did
not know Jan Pattillo, and she could sign her
name.  Aguilar contacted Bill Weinacht, an attorney she had known for many years.  Weinacht agreed to
represent Mrs. Garcia not only to regain her right to vote but also to protect
her from abusive campaign workers at the nursing home.  Weinacht knew that
the mail-in ballot process in Reeves County had been the subject of public
controversy in the past and that there had been many complaints filed regarding
campaign workers who had taken advantage of the elderly in the nursing home.[5]  Weinacht reviewed
the Election Code which requires a challenged voter to execute an affidavit
stating the facts necessary to support the person=s
eligibility to vote.[6]  Based upon the facts conveyed to him by
Aguilar, Weinacht prepared an affidavit for Mrs.
Garcia in order to establish her eligibility to vote.  The affidavit, which Mrs. Garcia executed on
March 7, 2000, stated as follows:

My
name is Maria M. Garcia.  I am 78 years
of age and I am qualified to give this affidavit.  I have never been convicted of a felony.  The facts stated herein are all within my
personal knowledge and are all true and correct.  

 

I
live at 1819 Memorial Drive at the Pecos Nursing Home.  I am registered to vote here in Reeves County
under the name Maria Garcia Martinez.  My
granddaughter, Anabel Aguilar, came by to visit me
and I asked her when I was going to get to vote because I never received my
ballot.  Anabel
called the County Clerk=s
office and they said I had already voted and that my mail in ballot said that
Jan Patillo [sic] had assisted me and that I signed
my name with an X.  I have not voted and
I do not know Jan Patillo [sic].  I know how to sign my name and I sign it like
I am signing at this time.  

 

That same day, Weinacht filed the affidavit with the Reeves County Clerk,
Dianne Florez,[7]
in order to establish Mrs. Garcia=s
eligibility to vote.  When Weinacht presented the affidavit to Florez
for filing, he asked her whether the facts stated in it were true and correct,
and she confirmed that they were. 
Consequently, Weinacht believed the statements
in the affidavit were true and correct.  

After
filing the affidavit with Florez, Weinacht
delivered a copy of it to Democratic Party Chair Bobby Dean, Sheriff Arnulfo AAndy@ Gomez, and District Attorney Randy
Reynolds because he believed the presiding judge deciding Mrs. Garcia=s eligibility might seek the input of
these officials.  Additionally, Weinacht believed the officials could stop further campaign
abuses.  Florez
and the presiding judge determined that Mrs. Garcia=s
affidavit stated facts necessary to support her eligibility to vote.  As a result, Mrs. Garcia personally cast her
ballot in the primary.








The
primary election resulted in a run-off between Pattillo=s husband and Herman Tarin.  Believing
Mrs. Garcia might be subjected to the same kind of conduct by zealous campaign
workers, Weinacht approached Democratic Party Chair
Dean.  He told Dean that Pattillo had no business going to the nursing home in order
to procure mail-in votes and that something should be done about it.  In support of his position that Pattillo was not fit to conduct the mail-in ballot process
at the nursing home, he mentioned that she was a candidate=s wife and the campaign treasurer of
her husband=s campaign,
and that she had lost her job as a hospital pharmacist because of a shortage in
controlled substances.  Weinacht had received the employment information from his
secretary, Sylvia Garcia,[8]
who was formerly employed at the hospital pharmacy.

After
the election, Pattillo sued Weinacht
and Tarin for defamation, intentional infliction of
emotional distress, and conspiracy to commit those torts.  Weinacht and Tarin, asserting multiple grounds, filed separate motions
for summary judgment pursuant to both Rule 166a(b) and
Rule 166a(i). 
The trial court granted both motions without specifying the basis for
its order.

SUMMARY JUDGMENT

In
her sole issue on appeal, Pattillo challenges the
granting of a traditional summary judgment in favor of Weinacht
and Tarin.  She
argues that fact issues exist with respect to whether Weinacht
was acting as an attorney for Mrs. Garcia when he defamed Pattillo.  She also maintains that Weinacht
failed to conclusively establish his defense of judicial privilege.  With respect to both Weinacht
and Tarin, she contends that a fact issue exists
regarding whether Mrs. Garcia=s
affidavit is a public record.








Standard of Review

In
a traditional summary judgment proceeding, the standard of review on appeal is
whether the successful movant at the trial level
carried the burden of showing that there is no genuine issue of material fact
and that judgment should be granted as a matter of law.  Lear Siegler,
Inc. v. Perez, 819 S.W.2d 470, 471 (Tex. 1991); Duran v. Furr=s
Supermarkets, Inc., 921 S.W.2d 778, 784 (Tex.App.‑‑El
Paso 1996, writ denied).  Thus,
the question on appeal is not whether the summary judgment proof raises fact
issues as to required elements of the movant=s cause or claim, but whether the
summary judgment proof establishes, as a matter of law, that there is no
genuine issue of material fact as to one or more elements of the movant=s
cause or claim.  Gibbs
v. General Motors Corp., 450 S.W.2d 827, 828 (Tex. 1970); Duran, 921
S.W.2d at 784.  In resolving the
issue of whether the movant has carried this burden,
all evidence favorable to the non‑movant must
be taken as true and all reasonable inferences, including any doubts, must be
resolved in the non‑movant=s favor.  Nixon v. Mr. Property
Management Co., Inc., 690 S.W.2d 546, 548-49 (Tex. 1985); Duran, 921
S.W.2d at 784.  A defendant who
conclusively negates at least one essential element of each theory pled by the
plaintiff is entitled to summary judgment. 
Wornick Co. v. Casas,
856 S.W.2d 732, 733 (Tex. 1993); see Camacho v. Samaniego,
954 S.W.2d 811, 817 (Tex.App.‑-El Paso 1997,
writ denied).  A defendant can also
prevail by pleading and conclusively establishing every element of an
affirmative defense.  Holguin v. Ysleta Del Sur Pueblo, 954
S.W.2d 843, 846 (Tex.App.‑-El Paso 1997, writ
denied).

Failure to Challenge All Grounds













Both
Tarin and Weinacht urge
that summary judgment should be affirmed because Pattillo
has failed to challenge on appeal each ground on which summary judgment could
have been granted.  It is well
established that where the trial court=s
judgment does not specify the ground or grounds relied upon for its ruling, the
summary judgment must be affirmed if any of the theories advanced is
meritorious.  Carr
v. Brasher, 776 S.W.2d 567, 569 (Tex. 1989).  When challenging such a judgment on appeal,
an appellant must show that each of the independent grounds alleged in the motion
is insufficient to support the summary judgment or suffer waiver of the
unchallenged grounds.  State
Farm Fire & Casualty Co. v. S.S., 858 S.W.2d 374, 380 (Tex. 1993); Duran,
921 S.W.2d at 784.  The appellant
avoids waiver by properly assigning error and by providing argument as to each
of the grounds.  See Plexchem Int=l, Inc. v. Harris County Appraisal
Dist., 922 S.W.2d 930, 930‑31 (Tex. 1996)(county appraisal district
preserved error on its argument that taxpayer failed to exhaust administrative
remedies, though district did not assign point of error to that specific
argument, where district stated in its first point of error in its appellate
brief that trial court erred in granting taxpayer=s
motion for summary judgment, and presented three pages of argument and
authorities on exhaustion issue in its brief); Malooly
Brothers, Inc. v. Napier, 461 S.W.2d 119, 121 (Tex. 1970)(where a summary
judgment does not specify the particular ground or grounds on which it is
based, an appellant preserves error in the summary judgment by either stating a
general issue or by stating specific issues relating to each ground on which
the summary judgment could have been granted). 
The requirement that the appellant present argument in the brief on each
ground is consistent with Rule 38.1=s
requirement that an appellant provide argument and supporting authority for the
contentions made.  See Tex.R.App.P. 38.1(h).  Although an appellant may properly assign
error under Malooly by filing a general point
or issue stating that the trial court erred in granting summary judgment, an
appellant is not relieved of her obligation imposed by the Rules of Appellate
Procedure to present argument relevant to each of the grounds on which summary
judgment could have been granted.  See
Pena v. State Farm Lloyds, 980 S.W.2d 949, 959 (Tex.App.‑-Corpus Christi 1998, no pet.)(holding that Malooly does
not relieve a party of the duty to raise and argue grounds for reversal merely
because a general point or issue is stated; an appellant has the burden to
challenge the grounds for the summary judgment and present at least some
argument on appeal).

Pursuant
to Rule 166a(i), Tarin moved for a no-evidence summary judgment on Pattillo=s
claims of conspiracy and defamation. 
Additionally, he sought traditional summary judgment under Rule 166a(b) on three grounds: 
(1) Pattillo is a public figure and he did not
act with actual malice; (2) his statements were true or substantially true; and
(3) he is not liable for republication of Garcia=s
affidavit because it is a public record. 
Pattillo=s
sole issue on appeal asserts generally that the trial court erred in granting
summary judgment in favor of Weinacht and Tarin, but she has briefed only the ground which pertains
strictly to the intentional infliction of emotional distress cause of
action.  Therefore, she has waived any
complaint relating to the other grounds on which summary judgment could have
been granted.  See Pena, 980
S.W.2d at 959; see also Marquez v. Providence Memorial Hosp., 57 S.W.3d
585, 594 (Tex.App.‑-El Paso 2001, pet. denied)(failure to brief issues results in waiver); City of
Midland v. Sullivan, 33 S.W.3d 1, 10 n.6 (Tex.App.‑-El
Paso 2000, pet. dism=d
w.o.j.)(same holding).  Because Pattillo
has not challenged the granting of summary judgment on the defamation or
conspiracy to defame causes of action, we could summarily affirm that portion
of the summary judgment granted in Tarin=s favor.  








Similarly,
Weinacht moved for a no-evidence summary judgment on Pattillo=s
conspiracy and defamation claims.  Under
Rule 166a(b), Weinacht
sought summary judgment because he conclusively proved a lack of actual malice,
because publication of a public record is not actionable as a matter of law,
and because his actions were protected by judicial privilege.  Pattillo=s arguments on appeal are limited to
the defamation and intentional infliction of emotional distress claims.  Again, she has waived her arguments with
respect to the other grounds.  See
Pena, 980 S.W.2d at 959.  Because this suit pertains to matters of
public concern, however, we have elected to determine whether any of the grounds  relied on by Tarin and Weinacht supports the
summary judgment rather than summarily affirming it.

Defamation and Conspiracy to Defame

Both
Tarin and Weinacht moved
for traditional summary judgment with respect to the defamation and conspiracy
causes of action on the ground that Pattillo was a
public figure and they did not act with malice.[9]  Pattillo has not
challenged the trial court=s
determination, made in a separate order, that she was a public figure.  Therefore, we will not examine that issue but
will instead apply the law pertaining to public figures.

In
a defamation case, a public official or public figure must prove that the
defendant:  (1)  published a statement; (2)  that was defamatory concerning the public
official or public figure; and (3)  that
the false statement was made with actual malice.  Carr, 776 S.W.2d at 569, citing New
York Times Co. v. Sullivan, 376 U.S. 254, 279‑80, 84 S.Ct. 710, 725‑26, 11 L.Ed.2d 686 (1964).  Because Pattillo
must prove actual malice in order to prevail at trial, Weinacht
and Tarin are entitled to summary judgment with
regard to any statement as to which they can negate actual malice as a matter
of law.  Casso v. Brand, 776
S.W.2d 551, 555 (Tex. 1989).  








Actual
malice is a term of art, focusing on the defamation defendant=s attitude toward the truth of what it
reported.  WFAA‑TV, Inc. v.
McLemore, 978 S.W.2d 568, 573 (Tex. 1998), cert. denied, 526 U.S.
1051, 119 S.Ct. 1358, 143 L.Ed.2d 519 (1999).  To establish actual malice, a public figure
must prove that the defendant made the statement Awith
knowledge that it was false or with reckless disregard of whether it was false
or not.@  Turner v. KTRK
Television, Inc., 38 S.W.3d 103, 120 (Tex. 2000), quoting Sullivan,
376 U.S. at 279‑80, 84 S.Ct. 710.  In this context, Areckless
disregard@ means
that the defendant Aentertained
serious doubts as to the truth of his publication.@  Turner, 38 S.W.3d at
120, quoting St. Amant v. Thompson, 390 U.S.
727, 731, 88 S.Ct. 1323, 20 L.Ed.2d 262 (1968).  Although actual malice focuses on the
defendant=s state
of mind, a plaintiff can prove it through objective evidence about the
publication=s
circumstances.  Turner, 38 S.W.3d at 120. 
This standard protects innocent but erroneous speech on public issues
yet still deters Acalculated
falsehoods.@  Turner, 38 S.W.3d at
134.








We
will first address the evidence pertaining to Mrs. Garcia affidavit.  Weinacht=s summary judgment evidence reflects
that he prepared the affidavit for Mrs. Garcia based upon information provided
to him by Anabel Aguilar, a person he had known for
many years.  Aguilar, in turn, had
obtained the information directly from the County Clerk=s
office.  Weinacht
asked Aguilar to be sure that she conferred with her grandmother regarding the
affidavit before Mrs. Garcia signed it.  Weinacht then took the executed affidavit to the clerk=s office.  When asked by Weinacht
to confirm the facts stated in the affidavit, the County Clerk told Weinacht that the statements were true.  According to his own affidavit, Weinacht believed the affidavit was true and correct and he
had no reason to believe otherwise. 
According to Tarin=s
affidavit, he believed the affidavit to be true because Mrs. Garcia had sworn
that it was true, it had been prepared by an attorney, and it was filed with
the County Clerk=s
office.  Further, Tarin
believed the affidavit had to be true after the County Clerk decided that Mrs.
Garcia would be permitted to vote.  This
evidence is sufficient to negate the element of actual malice with respect to
Mrs. Garcia=s
affidavit.  Pattillo
offered no summary judgment evidence which created a fact issue as to whether
either defendant entertained serious doubts as to the truth of the Garcia affidavit.

Pattillo=s
conspiracy and defamation claims against Weinacht
also pertain to statements he made regarding the termination of her employment
at the hospital.  According to his
affidavit, Weinacht believed that Pattillo
had lost her job as a pharmacist due to shortages in controlled
substances.  Prior to making the
statement, Weinacht had confirmed this fact by
talking to his secretary, Sylvia Garcia, who was a former employee of the
hospital pharmacy.  Sylvia Garcia
confirmed in her affidavit that while she was employed at the hospital
pharmacy, her supervisor instructed her not to let Pattillo
enter the premises because she had been terminated due to shortages of
controlled substances.[10]  The summary judgment evidence establishes a
lack of malice on the part of Weinacht in making this
statement.  Pattillo
did not offer any evidence indicating that Weinacht
had any doubts about the truth of the statement when he made it.  For these reasons, Weinacht
and Tarin conclusively established their right to
summary judgment on both the defamation and conspiracy to defame causes of
action.

Intentional Infliction of Emotional Distress








Weinacht and Tarin moved for
traditional summary judgment with respect to the intentional infliction of
emotional distress and conspiracy claims, arguing that their conduct in
publishing or republishing a public record is not outrageous conduct as a
matter of law.  Pattillo
responds that a fact issue exists as to whether Mrs. Garcia=s affidavit is a public record.[11]

            To
recover for the intentional infliction of emotional distress, a plaintiff must
establish that (1) the defendant acted intentionally or recklessly, (2) the
conduct was extreme and outrageous, (3) the defendant=s
conduct caused the plaintiff emotional distress, and (4) the emotional distress
was severe.  Morgan
v. Anthony, 27 S.W.3d 928, 929 (Tex. 2000); Twyman
v. Twyman, 855 S.W.2d 619, 621‑22 (Tex.
1993).  Whether a defendant=s conduct is Aextreme
and outrageous@ is a
question of law.  Bradford
v. Vento, 48 S.W.3d 749, 758 (Tex. 2001); Brewerton v. Dalrymple, 997 S.W.2d 212, 216 (Tex. 1999).  The mere fact that a
defendant=s conduct
is tortious or otherwise wrongful does not, standing
alone, necessarily render it extreme and outrageous.  Bradford, 48 S.W.2d
at 758.  Instead, to be extreme
and outrageous, conduct must be so outrageous in character, and so extreme in
degree, as to go beyond all possible bounds of decency, as to be regarded as
atrocious, and utterly intolerable in a civilized community.  Id.








An
individual has the right to be free from the public disclosure of embarrassing
private facts.  Industrial Foundation
of the South v. Texas Industrial Accident Board, 540 S.W.2d 668, 682 (Tex.
1976), cert. denied, 430 U.S. 931, 97 S.Ct.
1550, 51 L.Ed.2d 774 (1977).  Violation
of this right may give rise to liability for invasion of privacy.[12]  In this context, it has been determined that
the State may not protect an individual=s
privacy interests by recognizing a cause of action in tort for giving publicity
to highly private facts if those facts are a matter of public record.  Industrial Foundation of the South, 540 S.W.2d at 684. 
Once information is made a matter of public record, the protection
accorded freedom of speech and press by the First Amendment may prohibit
recovery for injuries caused by any further disclosure of and publicity given
to such information.  Industrial
Foundation of the South, 540 S.W.2d at 684; Hogan v. Hearst Corp.,
945 S.W.2d 246, 250 (Tex.App.‑-San Antonio
1997, no pet.).  It follows that
publication of information found in public records is not outrageous
conduct.  See Hogan, 954 S.W.2d at
252 (determining that the publication of information contained in public
records, as a matter of law, is not outrageous conduct).

Pattillo argues that Mrs. Garcia=s
affidavit is not a public record, or alternatively, a fact issue exists because
the affidavit is not file-marked, Pattillo was denied
a copy of the affidavit, and Florez kept the
affidavit in a locked safe.  Whether the
affidavit is a public record is a question of law.  Morris v. Smiley,
378 S.W.2d 149, 152 (Tex.Civ.App.‑-Austin 1964,
writ ref=d n.r.e.).  All
election records are public records as a matter of law, except as otherwise
specified by the Election Code or Chapter 552 of the Texas Government Code, and
must be made available to the public during the regular business hours of the
records=
custodian.  Tex.Elec.Code Ann. ' 1.012(a), (c).  The custodian is permitted to adopt
reasonable rules regarding public access to the election records.  Tex.Elec.Code Ann. ' 1.012(b).  The county clerk is the early voting clerk
for state and county officers and any other countywide election held at county
expense.  Tex.Elec.Code Ann. '
83.002.  AElection
records@ are not
defined by the Election Code but the term has been judicially determined to
mean those records which memorialize the actual election and the actual conduct
of the election.  Dallas Independent
School District v. Finlan, 27 S.W.3d 220, 228-29
(Tex.App.‑-Dallas 2000, pet. denied), cert.
denied, ___ U.S. ___, 122 S.Ct. 342, 151 L.Ed.2d
258 (2001).  








The
affidavit required by Section 63.010 establishing a
challenged voter=s
eligibility to vote is a record memorializing the election and how it was
conducted; as such, it is part of the election records.  Consequently, Mrs. Garcia=s affidavit is a public record.  Pattillo cites no
authority in support of her argument that the clerk must file-stamp an election
record.  With respect to the complaint
that the clerk kept the affidavit in a locked safe with all of the election
records, we note that the Election Code does not prescribe how the clerk must
keep the election records.  Given the
sensitivity and importance of these records, it is certainly not inadvisable to
keep them locked in a safe so long as the public is provided reasonable access
to the records.  At any rate, the manner
in which the records are preserved does not change their status as a public
record.  The same reasoning holds true
with respect to the clerk=s
purported denial of Pattillo=s
access to the affidavit.  The clerk
testified that Pattillo came into her office the day
after the affidavit was filed and demanded that she Ashow
her where she had signed her name, where her name was.@  Florez did not
understand what Pattillo meant.  The clerk would have allowed any member of
the public to view or copy the affidavit upon request.  Even assuming that Florez
actually denied Pattillo access to the affidavit, it
does not change the affidavit=s
status as a public record.  Because Mrs.
Garcia=s
affidavit is a public record, Tarin and Weinacht conclusively established that they did not commit
outrageous conduct by sharing the information found in the public record with
others in the community.  Therefore, they
established their entitlement to summary judgment on the conspiracy and
intentional infliction of emotional distress claims.  We overrule the sole issue on appeal and
affirm the judgment of the trial court.

 

August 29, 2002

                                                                        


ANN CRAWFORD McCLURE, Justice

Before Panel No. 2

Barajas, C.J., McClure, and Chew,
JJ.

 

(Do Not Publish)











[1]  Pattillo acknowledged that
she had assisted Mrs. Garcia with the ballot application.  Because Mrs. Garcia was shaking, Pattillo printed Garcia=s name
on the signature line and then signed her own name to indicate she had helped
Garcia.  





[2]  Apparently,
Louise Cassell, for whom Mrs. Garcia had worked as a
maid, went to the nursing home and helped Garcia fill out the mail-in
ballot.  Mrs. Garcia evidently did not
believe she was voting when she signed the document Cassell
gave her.  She had been ill and was
asleep when Cassell came to see her and she signed
the document without knowing what it was. 
Perhaps part of the confusion stemmed from the fact that, in Garcia=s words, Cassell Adidn=t put one of those things before me that I could
punch.@  





[3]  The record
does not reflect whether Aguilar spoke to the County Clerk or someone else in
her office.





[4]  It is unclear
whether the clerk=s office mistakenly told Aguilar that Ms. Pattillo had assisted Mrs. Garcia in casting her vote--as
opposed to obtaining a ballot--or whether Aguilar simply drew this inference
from the conversation.





[5]
 The
record indicates that mail-in balloting issues had been a consistent source of
controversy in Reeves County, necessitating grand jury testimony by the Reeves
County Democratic Party Chair on more than one occasion. 





[6]  Tex.Elec.Code Ann. ' 63.010 (Vernon Supp. 2002).





[7]  Dianne Florez is the niece of Mrs. Garcia and Annabel Aguilar=s cousin.  





[8]  The record
does not reveal whether Sylvia Garcia is related to Maria M. Garcia.





[9]  They also
filed a Rule 166a(i) motion
but we limit our review to the traditional motion for summary judgment.





[10]  Pattillo admitted that while
she was employed as a pharmacist by Owen Health Care, which contracted with
Reeves County Memorial Hospital for pharmaceutical services, she reported that
some morphine and Demerol were missing. 
She further conceded that accounting for the controlled substances was
her responsibility.  Owen ultimately lost
its hospital contract and Pattillo did not return to
work at the hospital.  





[11]  Pattillo additionally contends that the affidavits of Weinacht and Tarin are not
competent summary judgment evidence because they are self-serving.  We need not address this issue because the
status of the Garcia affidavit as a public record is not dependent on any facts
stated in these two affidavits.





[12]  To establish
the tort of invasion of privacy based upon the public disclosure of private
facts, the plaintiff must demonstrate that (1) publicity was given to matters
concerning his private life, (2) the publication of which would be highly
offensive to a reasonable person of ordinary sensibilities, and (3) the matter
publicized was not of legitimate public concern.  Star‑Telegram, Inc. v. Doe, 915 S.W.2d 471, 473‑74 (Tex. 1995).