# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

October 19, 2012

No. 12-50102
Summary Calendar

Lyle W. Cayce
Clerk

LONNIE E. LARSON,

Plaintiff-Appellant

v.

HYPERION INTERNATIONAL TECHNOLOGIES, L.L.C.,

Defendant-Appellee

Appeal from the United States District Court
for the Western District of Texas
USDC No. 11-00754

Before BENAVIDES, HAYNES, and HIGGINSON, Circuit Judges.

PER CURIAM:[*]

The Plaintiff-Appellant, Lonnie E. Larson ("Larson"), proceeding *pro se*, filed suit against Defendant-Appellee, Hyperion International Technologies, LLC ("Hyperion"), alleging two counts of violating the Computer Fraud and Abuse Act; one count of violating the Stored Communications Act; one count of violating the Federal Wiretap Act; invasion of privacy; and intentional infliction of emotional distress. Larson also sought punitive damages. The district court

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 12-50102

dismissed the complaint for failure to state a claim. Larson appeals the dismissal. Finding no reversible error, we AFFIRM.

I.     BACKGROUND

On February 26, 2002, Larson was employed as a general laborer for a construction contractor, JAS Glover ("Glover"). Larson had been hired through Altres, a temporary staffing agency that had placed him with Glover to work on the Lower Hamaukau Diverson Ditch Tunnel Detour Project in Hawaii. Larson was struck by lightning while working on this project. Altres completed an injury report, and Glover filled out an accident/incident report form regarding his injuries. These reports were sent to Liberty Mutual Fire Insurance Company ("Liberty Mutual"), which was the private worker's compensation insurance carrier. Additionally, a physician's report regarding Larson's injuries as a result of the lightning strike was submitted. Liberty Mutual denied the claim. Meanwhile, Larson had applied for Social Security Disability Income benefits based on the injuries he suffered from the lightning strike. Ultimately, he was found permanently disabled by the Social Security Administration.

After Larson was injured, he moved from Hawaii to Arizona. While in Arizona, Larson retained Defendant-Appellee Hyperion as a consultant for a project.[1] Frank Stephenson was Hyperion's Regional Manager in Tempe, Arizona. Stephenson sent a letter via facsimile to Liberty Mutual in which he stated that Larson was attempting to commit insurance fraud with respect to the lightning strike claim. Stephenson wrote that it appeared that Larson was physically active and not disabled. Stephenson neither signed the letter as an employee of Hyperion nor used Hyperion's address in the letter. Stephenson did however fax the letter to Liberty Mutual from Hyperion's fax machine. Stephenson used the Hyperion fax cover page on subsequent transmissions.

---

[1] Larson does not provide details about the project.

No. 12-50102

Stephenson faxed Liberty Mutual copies of Larson's personal and private communications, including medical records, communications with Larson's attorney, and payroll records.   Larson never consented to allowing Hyperion or Stephenson to have access to his private communications or records.   Larson claims that Stephenson gained access to Larson's personal information during the aforementioned project. Liberty Mutual stored this information with Larson's worker's compensation claim file.   Larson discovered that Liberty Mutual had this confidential information during discovery in a separate civil action Larson had brought against Liberty Mutual in Hawaii.

Thereafter, Larson filed a complaint against Hyperion, alleging:   two counts of violating the Computer Fraud and Abuse Act; one count of violating the Stored Communications Act; one count of violating the Federal Wiretap Act; invasion of privacy; and intentional infliction of emotional distress.   Larson also sought punitive damages.   The magistrate judge ordered Larson to file a more definite statement after determining that the complaint was insufficient for the court to properly evaluate his claims, and Larson complied.

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Hyperion filed a motion to dismiss Larson's complaint for failure to state a claim.   The district court granted the motion to dismiss and entered final judgment.   Larson now appeals *pro se*.

II.    ANALYSIS

A.    Standard of Review

We review de novo a district court's dismissal pursuant to Rule 12(b)(6), "accepting all well-pleaded facts as true and viewing those facts in the light most favorable to the plaintiff." *Stokes v. Gann*, 498 F.3d 483, 484 (5th Cir. 2007). However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S.  662, 678 (2009) (citation omitted). "To survive a motion to dismiss, a complaint must

No. 12-50102

contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (citation omitted). In the instant case, Larson was proceeding pro se when he filed his complaint. Although pro se complaints are held to less stringent standards than those crafted by attorneys, "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002) (citation and internal quotation marks omitted).

### B.    Rule 12(b)(6) Dismissal

#### 1.    Tort Claims

Larson contends that the district court erred in dismissing his complaint for failure to state a claim.  It is undisputed that Texas law governs Larson's tort claims of invasion of privacy and intentional infliction of emotional distress. Larson has filed suit against Hyperion based solely on the actions taken by Hyperion's Regional Manager, Stephenson.  "The general rule is that an employer is liable for its employee's tort only when the tortious act falls within the scope of the employee's general authority in furtherance of the employer's business and for the accomplishment of the object for which the employee was hired." *Minyard Food Stores, Inc. v. Goodman*, 80 S.W.3d 573, 577 (Tex. 2002). Further, the Texas Supreme Court has explained that "for an employee's acts to be within the scope of employment, 'the conduct must be of the same general nature as that authorized or incidental to the conduct authorized.'" *Id.* (quoting *Smith v. M Sys. Food Stores, Inc.*, 297 S.W.2d 112, 114 (1957)).  Accordingly, "if an employee deviates from the performance of his duties for his own purposes, the employer is not responsible for what occurs during that deviation."

Larson has alleged that Stephenson was Hyperion's Regional Manager in Tempe, Arizona.  Larson has alleged that Stephenson acquired Larson's personal and private communications, including emails, medical records, and attorney-client correspondence, and sent them via facsimile to Liberty Mutual.

No. 12-50102

Stephenson did not have Larson's permission to access or distribute this information. Stephenson used Hyperion's fax machine and Hyperion's cover page. Larson has not alleged how Stephenson's alleged attempt to show that Larson was committing insurance fraud in Hawaii would further Hyperion's technology business.[2] In other words, Larson has failed to allege how Stephenson's allegedly tortious and criminal conduct was within the scope of his employment or how it would have furthered Hyperion's business.

### a.    Intentional Infliction of Emotional Distress

The elements of a claim for intentional infliction of emotional distress are: "(1) the defendant acted intentionally or recklessly; (2) the defendant's conduct was extreme and outrageous; (3) the defendant's actions caused the plaintiff emotional distress; and (4) the resulting emotional distress was severe." *Tiller v. McLure*, 121 S.W.3d 709, 713 (Tex. 2003). "Extreme and outrageous conduct is conduct so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* (citations and internal quotation marks omitted). The district court ruled that, as a matter of law, the allegations that Stephenson shared private employment and medical records with an insurance adjustor did not constitute extreme and outrageous conduct under Texas law. We agree. *See Brewerton v. Dalrymple,* 997 S.W.2d 212, 215 (Tex. 1999) (explaining that "the fact that an action is intentional, malicious, or even criminal does not, standing alone, mean that it is extreme or outrageous for purposes of intentional infliction of emotional distress").

Further, even assuming *arguendo* that Larson's complaint states a claim for intentional infliction of emotional distress against Stephenson, he has not

---

[2]    Although Larson speculated in his district court pleadings that Hyperion was attempting to develop Liberty Mutual as a client, we agree with the district court that Larson must allege more than the mere possibility that Hyperion is liable for the conduct at issue.

No. 12-50102

alleged facts sufficient to show that Stephenson's actions were in the scope of his employment with Hyperion. Thus, he has not stated a claim against Hyperion, the sole defendant in this suit.

### b.    Invasion of Privacy

The claim for an invasion of privacy has the following elements: "(1) publicity was given to matters concerning the plaintiff's private life; (2) publication of such facts would be highly offensive to a reasonable person of ordinary sensibilities; and (3) matters publicized are not of legitimate public concern." *Crumrine v. Harte-Hanks Television, Inc.*, 37 S.W.3d 124, 127 (Tex.App.–San Antonio 2001). The district court dismissed this claim because Larson's complaint did not contain an allegation that Stephenson had shared the information with the public at large. We agree. *See* Restatement (Second) of Torts § 652D cmt. a (1979) ("'Publicity' . . . means that the matter is made public, by communicating it to the pubic at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge."). Nonetheless, even assuming *arguendo* that Larson's complaint states a claim for invasion of privacy against Stephenson, he has not alleged facts sufficient to show that Stephenson's actions were in the scope of his employment with Hyperion. Thus, Larson has not stated a claim against Hyperion.

### 2.    Statutory Claims

In his complaint, Larson also raised two counts of violating the Computer Fraud and Abuse Act; one count of violating the Stored Communications Act; and one count of violating the Federal Wiretap Act. As recognized by the district court, all the preceding statutes expressly require *intentional* interception or publication of electronic communications. The Wiretap Act proscribes "intentionally intercept[ing] any electronic communications." *DIRECTV, Inc. v. Bennett*, 470 F.3d 565, 566-67 (5th Cir. 2006); 18 U.S.C. §§ 2511(1); 2520(a). Similarly, the Computer Fraud and Abuse Act prohibits certain intentional or

6

No. 12-50102

knowing access to a computer without authorization. *See* 18 U.S.C. § 1030(a)(4)-(5); *United States v. Phillips*, 477 F.3d 215, 220-21 (5th Cir. 2007) (rejecting defendant's argument that the government presented insufficient evidence to "find him guilty of intentional unauthorized access" under § 1030). Finally, the Stored Communications Act requires that a defendant "intentionally access[ ] without authorization" or "intentionally exceed[ ] an authorization to access" a facility that provides electronic communication service. 18 U.S.C. § 2701(a)(1)-(2); *Steve Jackson Games, Inc. v. U.S. Secret Serv.*, 36 F.3d 457, 459 (5th Cir. 1994) (recognizing that 18 U.S.C. § 2701 prohibits "intentional access, without authorization, to stored electronic communications").

Here, Larson alleges that Stephenson intentionally intercepted and divulged his private communications. The statutes require intentional conduct by the defendant. As previously set forth, Larson's allegations do not suffice to show that Stephenson was acting on behalf of Hyperion. Thus, the district court did not err in dismissing the statutory claims against Hyperion.

C.    Dismissal Without Leave to Amend Complaint

Larson contends that the district court abused its discretion by dismissing his complaint without granting him leave to amend it.[3] Larson is correct that, as a general rule, "a *pro se* litigant should be offered an opportunity to amend his complaint before it is dismissed." *Brewster v. Dretke*, 587 F.3d 764, 767-68 (5th Cir. 2009). "Granting leave to amend is not required, however, if the plaintiff has already pleaded his 'best case.'" *Id.* (citation omitted).

We conclude that Larson had pleaded his "best case." After Larson filed his complaint, the magistrate judge ordered him to file a more definite

---

[3] For the first time on appeal in his reply brief, Larson contends that the district court should have allowed him discovery before it dismissed his complaint. "Arguments raised for the first time in a reply brief, even by pro se litigants such as [Larson], are waived." *United States v. Jackson*, 426 F.3d 301, 304 n.2 (5th Cir. 2005).

statement, and Larson complied. Additionally, Larson filed an Opposition to the Defendant's Motion to Dismiss. As Hyperion points out, in its order of dismissal, the district court quoted excerpts from arguments in Larson's Opposition to Defendant's Motion to Dismiss that were not contained in either his complaint or his More Definite Statement. Further, in his appellate brief, Larson fails to set forth "any material facts he would have included in an amended complaint" had he been given the opportunity to do so. *Brewster*, 587 F.3d at 768. Because Larson "gives no indication that he did not plead his best case" in his district court pleadings, he has failed to show that the district court abused its discretion in dismissing his complaint. *Id.*

III.    CONCLUSION

For the above reasons, the judgment of the district court is AFFIRMED.